(No. 21835.—

THE ACME WINDOW CLEANING COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(CHARLOTTE KOSEVICH *et al.* Defendants in Error.)

*Opinion filed June 16, 1933.*

HAMLIN K. BUCHMAN, for plaintiff in error.

AUGUSTINE J. BOWE, and WILLIAM J. BOWE, for defendants in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

On July 8, 1931, Nicholas Kosevich was engaged in washing windows on the sixth floor of the Fannie May building, at 218-220 West Madison street, in the city of Chicago. He fell to the sidewalk and was instantly killed. A claim for compensation from plaintiff in error, the Acme

Window Cleaning Company, (herein called the company,) was filed with the Industrial Commission by defendants in error, Charlotte Kosevich and David Robert Kosevich, the widow and minor child of the deceased. An arbitrator, after a hearing before him, entered an award against the company and in favor of defendants in error. The decision and award of the arbitrator were confirmed by the Industrial Commission, and by the circuit court of Cook county after a review of the record on a writ of *certiorari*. This court has allowed a writ of error for further review of the record.

The sole question presented for decision by this court is whether or not, at the time of the fatal accident, the deceased was an employee of the company. The company is engaged in the business of washing windows of buildings under contracts with the owners and occupants thereof. Its office is located on the second floor of a building at 449 North Clark street, in the city of Chicago. On that floor and the third floor of that building are rooms occupied by its employees, about twenty in number. Arthur H. La-More is the president of the company. F. L. Bergeron is the secretary and general manager but not a stockholder of the company. Work is assigned by the company to its employees by tickets, and when the work specified by a ticket is completed the employee or employees holding the ticket are paid by the company sixty per cent of the amount collected by the company for the work. For five years before the fatal accident Frank Yakubovitch was an employee of the company and lived in one of the rooms in the building at 449 North Clark street. Yakubovitch and the deceased came to this country from Russia, where they had grown up together in the same neighborhood, and they were friends. Some time in May, 1931, the deceased went to see Yakubovitch and told him that he, the deceased, was without employment and would like to get a job as window-washer. Yakubovitch took the deceased to LaMore,

who stated that he had no work for him at that time. The deceased continued to ask Yakubovitch to help him get work, and about a week later Yakubovitch took the deceased to Bergeron and told Bergeron that he (Yakubovitch) was going to take the deceased to work with him and wanted utensils for him to use. Bergeron consented and gave to either Yakubovitch or the deceased a brush, pole, pail, sponge and squeegee. These articles were charged to Yakubovitch on the records of the company. Thereafter for some weeks the deceased helped Yakubovitch do the work that was assigned to him by the company. When the tools and utensils used in the work by the men were not left at night at the place they were working they were placed in a locker in the building at 449 North Clark street which had been assigned to Yakubovitch and to which he had the key. The deceased had no key to this locker. He lived at his home with his family and not in the Clark street building, but he came to that building in the mornings and went from there to work with Yakubovitch. No work was assigned to the deceased by the company and it never paid him any wages. Yakubovitch's wages amounted to from $30 to $50 a week, depending on the amount of work done. He, according to his testimony, paid the deceased sometimes $10 and sometimes $15 a week. He testified that Bergeron told him to give the deceased whatever he wanted to. Bergeron testified that he did not consider the deceased an employee of the company and was not concerned with the arrangements, if any, that Yakubovitch made for paying the deceased. He further testified that when work was assigned to two employees of the company he always designated how the wages received by the employees were to be divided between them. Before the accident Yakubovitch had for five years washed the windows of the Fannie May building alone, as a one-man job. The office windows in that building were washed once a week and the factory windows once a month. In the latter

part of June, 1931, Yakubovitch was assigned work on a building at the University of Chicago that had just been erected. The work was done by the company for the contractor who erected the building. Yakubovitch took the deceased to work with him there. When Bergeron inspected the work he found that the work done by the deceased was unsatisfactory and he had Yakubovitch do it over. When on June 24, 1931, Yakubovitch was paid for his work on that building Bergeron told him not to take the deceased to work with him any more because he was slow and his work was sloppy and unsatisfactory. Yakubovitch told the deceased what Bergeron had told him, and on the following Monday, June 29, 1931, in the office of the company, Bergeron again, in the presence of the deceased, told Yakubovitch not to take the deceased to work with him any more. Bergeron did not, however, require Yakubovitch to return to the company store room the utensils that had been given him to be used by the deceased. Thereafter, disregarding Bergeron's instructions, Yakubovitch did take the deceased to work with him and he was working with him when the accident happened.

At the time of the accident the deceased was washing the outside of windows and wearing a life-belt of the company that had been issued to Yakubovitch. Yakubovitch testified that Bergeron and LaMore knew that the deceased worked with him after June 29, because they saw the deceased at the Clark street building and leaving that building with him (Yakubovitch) to go to work. Bergeron testified that he did not know until after the death of the deceased that Yakubovitch took the deceased to work with him at any time after June 24, 1931. LaMore testified that after the job on the University of Chicago building was completed he told Bergeron to tell Yakubovitch not to take anyone other than a regular employee of the company to work with him, and that he never at any time saw the deceased bringing tools and utensils of the company into the

Clark street building or leaving that building in the morning with such tools and utensils.

Charles Nourse, an employee of the company, testified that he first met the deceased when working on the University of Chicago building; that on the Monday after the work on that building had been completed he was standing in the hall of the Clark street building, just outside the company office, with the, deceased and M. D. Cherry, another employee of the company; that Bergeron came out of the office into the hall, and witness asked him if there was any work for witness, and Bergeron replied, "Not right now, but drop around every morning and I will give you some work as it comes in;" that the deceased then asked Bergeron if there was any work for him, and Bergeron replied, "No, your work at the University of Chicago was unsatisfactory; you bothered the other men on the job, so there will be nothing for you here any more," and that witness then went down the stairs and the deceased went into the office of the company. M. D. Cherry testified substantially to the same facts and conversations related by witness Nourse.

Joseph Arley, an employee of the company, testified that on the Monday morning after the work on the University of Chicago building had been completed he was in the office of the company; that Yakubovitch was also there, and Bergeron then told Yakubovitch not to take the deceased to work with him any more because his work at the university building was unsatisfactory, and that the deceased was at that time standing beside Yakubovitch.

By section 4 of the Workmen's Compensation act the word "employer" is defined to include every person, firm, public or private corporation, "who has any person in service or under any contract for hire, express or implied, oral or written;" and by section 5 of that act the term "employee" is defined to mean "every person in the service of another under any contract of hire, express or implied, oral

or written." These definitions should be broadly construed, (*Field & Co.* v. *Industrial Com.* 285 Ill. 333; *Allen-Garcia Co.* v. *Industrial Com.* 334 id. 390;) but it cannot be held that the relation of employer and employee exists between two persons unless one is in the service of the other or under a contract of hire, express or implied. (*Thompson* v. *Industrial Com.* 351 Ill. 356.) It is unnecessary for us to determine and decide whether or not prior to June 29, 1931, the relation of employer and employee existed between the company and the deceased. It is clear under the evidence that when the deceased worked with Yakubovitch after that date he did so without the consent of the company and against the express orders of the company given to Yakubovitch, of which the deceased had knowledge. At the time of the accident, therefore, the deceased was not in the service of the company under any contract of hire, express or implied, and the finding of the Industrial Commission that at the time of the accident the relation of employer and employee existed between the company and the deceased is clearly and manifestly against the weight of the evidence. *Nelson* v. *Industrial Com.* 346 Ill. 82.

The judgment of the circuit court is reversed and the award of the Industrial Commission is set aside.

<div align="center">

*Judgment reversed and award set aside.*