LYELL CREPPS, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(JAMES H. MARTIN, Plaintiff in Error.)

*Opinion filed March 24, 1949.*

ANGERSTEIN & ANGERSTEIN, of Chicago, (LESTER A. WHITE, and ARMAND CHIAPPORI, of counsel,) for plaintiff in error.

FRANCIS J. GARIEPY, of Chicago, (CHARLES E. MALLON, of counsel,) for defendant in error.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Lyell Crepps, an electrician, while installing some light fixtures in the real-estate office of James H. Martin, fell from a ladder, breaking his right leg. On a claim for compensation he received an award from the arbitrator, which, on review by the commission, was set aside on the ground that the relationship of employer and employee did not exist. The circuit court of Cook County reversed the decision of the commission and entered judgment for compensation in accordance with the award of the arbitrator. A writ of error to review this judgment has been allowed on the petition of Martin. Prior to the taking of evidence before the Industrial Commission it was stipulated that the only questions in dispute were whether the relationship of employer and employee existed at the time of the accident, and whether it arose out of and in the course of the employment.

Plaintiff in error makes the following contentions in this court: (1) The finding of the Industrial Commission that the relationship of employer and employee did not exist was not manifestly contrary to the weight of the evidence. (2) Defendant in error, at the time of the accident, was not engaged in the usual course of trade, business, profession or occupation of plaintiff in error.

The question whether the relation of employer and employee existed at the time of the accident is, under the evidence in this case, a controverted question of fact. The existence of such relationship is, in every case, primarily a question of fact, and can only become a question of law where there is no conflict in the evidence and but one conclusion can reasonably be drawn therefrom. (*Lawrence* v. *Industrial Com.* 391 Ill. 80.) It is a well-settled rule that courts may not, on review of an award made by the Industrial Commission, disturb factual determinations of that body unless the decisions be manifestly against the

weight of the evidence. (*Schwartz* v. *Industrial Com.* 379 Ill. 139.) And this rule is just as applicable to findings and orders denying compensation as to those which support awards allowing it. (*Moergen* v. *Industrial Com.* 394 Ill. 383.) It is not the province of the courts to try disputed questions of fact and to weigh the evidence thereon and set aside the findings of the Industrial Commission on such issues unless the findings of the commission are manifestly against the weight of the evidence. (*Murrelle* v. *Industrial Com.* 382 Ill. 128.) The conclusion and determination of the Industrial Commission on a question of fact will not be disturbed unless against the manifest weight of the evidence, regardless of how the court might hold were it to hear the evidence. (*Wilhelm* v. *Industrial Com.* 399 Ill. 80; *Allen-Garcia Co.* v. *Industrial Com.* 334 Ill. 390.) Neither this court nor the lower court may substitute its judgment for that of the commission upon a question of fact, unless the finding of the commission is manifestly against the weight of, and has no substantial foundation in, the evidence. *Gudeman Co.* v. *Industrial Com.* 399 Ill. 279.

The question before this court for decision, therefore, is not whether the relation of employer and employee existed between the parties to this suit at the time of the accident, but whether the finding that such relationship did not exist is manifestly against the weight of the evidence or has no substantial foundation in the evidence. The record discloses considerable evidence was heard on the question whether such relationship existed, which necessitates a review of same to determine the propriety of the order of the circuit court reversing the decision of the commission.

Relevant evidence, which is undisputed, is as follows: James H. Martin was a real-estate broker engaged in selling and managing real estate for other persons. His regular employees were seven salesmen and four office assistants

or clerks. In January, 1946, he changed the lighting system in his office to electric fluorescent lights. He ordered the new fixtures from John Lambert, who owned and operated an electrical appliance business under the name of Acme Electrical Supply Company. Lambert brought the fixtures to Martin's office, together with an electrician who installed them. After they were installed, Lambert billed Martin for the fixtures and the installation of them. This bill, which was paid by Martin, was in the total amount of $192.71, and included a charge of $35 for labor. Afterward, in May, 1946, Martin told Lambert two of the fixtures were too small, that he wanted them replaced with larger ones and also an additional fixture installed, and wanted the new fixtures to correspond with the other fixtures he had in his office. Monday, May 20, 1946, Lambert took the new fixtures and the defendant in error, Crepps, in his car to Martin's office, where Crepps commenced the work of installing the fixtures. He worked until May 22, which was the day the accident occurred. On May 21, the second day he worked, Martin made a trip to Lambert's office and complained to him about the way defendant in error was doing his work. Defendant in error had not completed the job at the time he was injured and Lambert sent over another electrician, one Sleight, who completed the installation.

Lambert testified that sometimes people who want fixtures want them installed, and in such cases he calls defendant in error or some other electrician for that purpose; that defendant in error is generally in and out of his store and that he has used both him and Sleight on jobs; that when Martin told him he wanted some more fixtures for his office he also asked him if he could send a man over to put them up and that he, Lambert, told him at that time he would not be responsible for the electrician, that the electrician was on his own. He also testified that when Martin came to his store complaining about the way Crepps

was doing the work he told him to pull him off the job if he wanted to, that it was up to him, that "it had nothing to do with me whatsoever," but admitted he might have told Martin he was coming over to see Crepps. He testified that he never employed defendant in error to do any work for him, never paid him any money and never gave him any instructions or directions about the work to be done for Martin; that when witness drove defendant in error to Martin's office he, the witness, had no conversation with Martin, but just brought the fixtures in and that Martin told defendant in error where he wanted them hung; that during the time Crepps was doing the work, witness was there twice to bring him the material he needed for the job and that the next day after the accident Martin phoned the witness and asked him for an electrician to finish the job and witness sent over Sleight.

Defendant in error, Crepps, testified that Lambert told him about selling the fixtures to Martin and asked him if he would put them up; that Lambert said, "I got a friend over on Halsted Street, I sold him some fixtures. Will you put them up for him?" And I replied, "Sure, I will;" that Lambert took him and the fixtures to Martin's office in his car where Lambert introduced him to Martin as the electrician who had come over to put up the fixtures for him; that Lambert then left and Martin told him what he wanted done and where to install the fixtures; that Lambert never gave him any instructions; that he ran out of material and Martin told him to get more from Lambert; that Martin told him he was the boss and threatened to get someone else to do the job unless he moved one of the fixtures to the location indicated; that he told Martin he was working by the hour and that it did not make any difference to him where the fixture was placed.

Sleight, the second electrician, testified that Lambert told him about Crepps being hurt and asked him if he wanted to finish the job; that Lambert drove him to the Martin

office, let him out of the car and then drove away; that witness went in and said to Martin, "I understand the electrician got injured and Mr. Lambert brought me down here to see if I could finish up this work;" that he asked Martin if he wanted him to go ahead and finish the work, and while he was doing the work Martin said with reference to certain phases of the work, "If you don't move it I will fire you;" that after the work was completed he asked Martin for his pay and Martin said, "I will send you a check for you and Crepps for the time involved, the time that you put in making this installation."

Plaintiff in error, Martin, testified that during the month of May, 1946, he phoned Lambert and told him that two of the fixtures which he had installed the preceding January were inadequate, that he wanted fixtures twice their size and also an additional fixture and for him to take care of the job; that in a few days Lambert brought over the fixtures and the electrician Crepps; that the witness pointed out to Lambert the fixtures he wanted replaced with larger ones and the place where he wanted the third fixture, and told him he wanted the third fixture hung so it would light the table where some books were kept; that Lambert then talked to Crepps and drove away; that the second days Crepps worked the witness went to Lambert's office to tell him Crepps was stalling on the job and was in the way and that if he was paying him any regular wages he was not getting a bargain because the man was wasting time and that the witness wanted Lambert to get the matter over with in a hurry; that Crepps came in while he was talking to Lambert and that the witness said, "Here he is looking for his wages now," and left, as he testified, in disgust.

Martin further testified that he never gave any instructions or directions to Crepps; that Crepps never said anything to him about needing material, that he never told Crepps to get the material from Lambert or had any con-

versation with him about material, and that he, the witness, knew nothing about the material that was needed or used and that he had no conversation whatever with Crepps about the work except some discussion with him as to the position of a fixture that was to be hung. He further testified that Crepps was not working with ordinary speed, but was stalling on the job, standing around and "fooling with this and fooling with that" and was in their way in the office, and that when he fell off the ladder he was leaning around the corner to see what Martin was saying to a man. The witness further testified that the next day after Crepps was hurt Lambert brought Sleight to the office and that during the time he was working there the witness had no conversation with him about the work except as to the place where one of the fixtures was to be hung; that Sleight was drinking out of a bottle most of the time he was working and was thoroughly intoxicated before he completed the work; that after Sleight finished the work he started to use the telephone and Martin called Lambert and told him to get Sleight out of there because he was drunk and insulting. Martin further testified that he never employed defendant in error, that he never asked him to install any fixtures, that he never saw him before Lambert brought him into his office and that Crepps never discussed with the witness the charge for installing the fixtures. Martin denied that Sleight asked him for his pay when he finished the job and denied that in his conversation with Lambert about the installation of the fixtures he asked Lambert if he knew of an electrician to send over to install them for the witness.

Joseph Hart, a salesman employed by Martin, testified that about May 18 or 19, 1946, he was present in Martin's office and heard a conversation between Martin and Lambert; that Martin pointed out to Lambert where he wanted some lights changed and where he wanted another light installed; that Martin told him he wanted the work done

as soon as possible, and Lambert said, "All right, I will have a man over here in a short time." This conversation was denied by Lambert upon rebuttal.

This court recognizes that it is impossible to lay down a rule by which the status of a person performing a service for another can be definitely fixed as an employee. (*Ferguson & Lange Foundry Co.* v. *Industrial Com.* 346 Ill. 632.) Ordinarily no single feature of the relation is determinative but all must be considered together and each case must depend upon its own facts. (*Kehrer* v. *Industrial Com.* 365 Ill. 378.) There are a number of factors which have evidentiary value in determining whether or not one person is in the employ of another, the most important of which is the degree of control retained by the person for whom the work is being done. (*Kehrer* v. *Industrial Com.* 365 Ill. 378; *Fischer* v. *Industrial Com.* 301 Ill. 621.) The degree of control, which is the line of demarcation between an independent contractor and an employee, is not always clear. In determining in any given case whether or not the status of an individual is that of an employee, there may be present various facts and circumstances which are persuasive to the conclusion that he is an employee and other facts and circumstances leaning to the opposite conclusion.

The relationship of employer and employee is a contractual relationship, the requisites to the formation of such relationship being determined by an application of the principles governing the formation of other contracts. The relationship is a product of mutual assent, that is, of a meeting of minds expressed by some offer on the part of one to employ or to work for the other and an acceptance on the part of the other. (35 Am. Jur. 450, par. 9.) While this court broadly construes the definition of "employee" contained in the Workmen's Compensation Act, (*Allen-Garcia Co.* v. *Industrial Com.* 334 Ill. 390; *Marshall Field*

*& Co.* v. *Industrial Com.* 285 Ill. 333,) nevertheless, there can be no employer and employee relationship, and no liability for compensation under the act, in the absence of a contract of hire, express or implied. (*Acme Window Cleaning Co.* v. *Industrial Com.* 352 Ill. 645; *Thompson* v. *Industrial Com.* 351 Ill. 356.) This court cannot create a liability where the act creates none. This presents the crucial question as to the determination of whether or not the relationship of employer and employee existed at the time of the injury. It must be observed, if the testimony of Lambert and Crepps is to be believed, Crepps was the employee of Martin, but if the testimony of plaintiff in error and Joe Hart is to be believed, it is obvious the relationship of employer and employee did not exist between Martin and Crepps. It is the province of the Industrial Commission to weigh the probabilities, judge the credibility of the witnesses and determine whose testimony is the more worthy of belief. The decision of the Industrial Commission cannot be said to be against the manifest weight of the evidence merely because the commission chose to believe the testimony of Martin and Hart and not that of Lambert and Crepps. There must be something more than the mere existence of conflicting testimony to warrant the conclusion that a finding of fact is erroneous. (*Caterpillar Tractor Co.* v. *Industrial Com.* 397 Ill. 474.) It is significant in this case that Martin complained to Lambert about the manner in which Crepps was performing the work. This would indicate that Martin did not have the right to supervise Crepps, or the right to control the manner and method in which he was performing the work, even though Lambert may have told Martin on that occasion to pull him off the job if he wanted to, that the matter was up to Martin and that he, Lambert, was not concerned in it. This would not create the relationship of employer and employee between Martin and Crepps. There

is no way that the contractual relationship of employer and employee can be created without the consent or assent of both parties, express or implied. Martin's discussion with Crepps about the position where one of the fixtures should be hung was an exercise of authority as to the result of the work only and could not be considered as indicative of an employer and employee relationship.

Another significant fact testified to by both Lambert and Martin is that Lambert, the preceding January, had sent the electrician to install the fixtures which he sold Martin at that time, and after they were installed, tendered Martin a bill for both the fixtures and installation, which was paid by Martin. Lambert's explanation that he did so because Martin insisted on it being done that way indicates that Martin did not want to assume the responsibility of the installation of the fixtures, but wanted Lambert to both furnish and install them for him. This is a circumstance lending support to Martin's contention that Lambert, as an independent contractor, undertook to both furnish and install the fixtures, which were installed in Martin's office in May, 1946.

The Industrial Commission may draw reasonable inferences and conclusions from evidentiary facts. (*Lawrence* v. *Industrial Com.* 391 Ill. 80.) It is not the duty of this court to determine where the preponderance of the evidence lies and substitute its judgment for the judgment of the commission, unless the evidence is of such a conclusive character as to force a conclusion contrary to that of the commission.

The finding of the commission not being contrary to the manifest weight of the evidence, the circuit court of Cook County erred in vacating and setting it aside. The judgment of the circuit court is, therefore, reversed and the order of the Industrial Commission confirmed.

*Circuit court reversed;*
*Industrial Commission confirmed.*