ROBERT BOKOWSKI, Plaintiff-Appellant, *v.* CIVIL SERVICE COMMISSION OF THE CITY OF CHICAGO, Defendant-Appellee.

(No. 54402;

First District—August 20, 1971.

Adamowski, Newey, and Riley, of Chicago, (FRANCIS X. RILEY, of counsel,) for appellant.

Richard L. Curry, Corporation Counsel, of Chicago, (Marvin E. Aspen, John Elson, Assistant Corporation Counsel, of counsel,) for appellee.

Mr. PRESIDING JUSTICE ENGLISH delivered the opinion of the court:

This is an appeal from an order of the circuit court confirming a decision of the Civil Service Commission by which plaintiff was discharged from his position with the Chicago Fire Department.

The Commissioner of the Chicago Fire Department filed charges with the Civil Service Commission against plaintiff. After a hearing, plaintiff was found guilty of violating the following sections of the Rules and Regulations of the Fire Department: Section 383, "Entering Places Where Intoxicating Liquors Are Sold While On Duty, Except In The Immediate Pursuit Thereof"; Section 384, "Neglect of Duty"; section 390, "Absence From Duty Without Permission." The Commission thereupon ordered that plaintiff be discharged from his position as firefighter, 1st Class. This order was confirmed by the circuit court on administrative review.

Plaintiff contends that the evidence adduced at the hearing failed to prove the charges, that the rule against firemen on duty entering places where intoxicating beverages are sold was unreasonably applied in this case, and that the discharge from the service was harsh and unconscionable punishment even if the charges were proven. In view of plaintiff's contentions, we find it necessary to set out in detail the testimony taken at the hearing.

*Ennis Rice,* for the Department: He is the Division Marshal of the 4th Division of the Chicago Fire Department and is assigned to Headquarters. On May 7, 1967, plaintiff was working under his direction and was detailed to the International Amphitheatre. About 4:00 A.M. on May 8, he received a call from the Amphitheatre that a fireman was in trouble. When he arrived, he found plaintiff sitting on the floor. Plaintiff explained that his knee had been injured when he was attacked by some Mexicans in Donovan Hall, which is a partitioned area in the southern part of the Amphitheatre. A dance had been held by a Mexican group in Donovan Hall, and he [Rice] understood that alcoholic beverages were served there. Plaintiff said that he had gone to the washroom in Donovan Hall because the one near his apparatus stank; that he had also heard that sandwiches were being given away at the dance and he wanted to get

one. Plaintiff claimed that he had gone into the men's room and three men had chased him when he came out. He said he had done nothing to provoke the attack and had not had anything to drink.

Marshal Rice had given orders to remove Flood Pressure Unit 11 (plaintiff's unit) from Donovan Hall because of the presence of a cocktail bar there, and had ordered that no firemen were to go into Donovan Hall. The order was given to plaintiff and he was told to relay it to the other men. A general regulation prohibiting on-duty firemen from entering places where liquor is sold was also in effect at that time.

The witness called an ambulance for plaintiff, then took another man, Kushner, to check and see if the toilets were properly marked, which they were. He checked the washroom plaintiff had said was dirty, and found nothing wrong with it. This washroom was close to plaintiff's apparatus.

Although the men are not expected to stay on their apparatus and may visit other rigs, they are expected to stay close to their equipment. The apparatus to which plaintiff was assigned was located in Exposition Hall. The washroom plaintiff had used was 300 feet south to Donovan Hall and an additional 250 feet beyond.

*Arthur Lentz,* for the Department: He is a Lieutenant in the Chicago Fire Department. He arrived at the Amphitheatre about midnight and found that plaintiff was missing from his assignment when he should have been at his apparatus. Engineer Kushner said plaintiff had taken a walk to the south end of the hall. He waited about 10 minutes and, when plaintiff did not return, he went to Donovan Hall looking for him. Intoxicating liquors were being sold in Donovan Hall that night. There were two or three thousand people at the dance. After searching for about one and a half hours, he found plaintiff talking to some people at the south end of Donovan Hall, about a block and a half from his equipment. He asked plaintiff what he was doing there, and plaintiff replied, "I am just looking around." He told plaintiff to return to his apparatus, and plaintiff said something to the effect of "this job is for squares." He told plaintiff to return to his apparatus or he would be suspended. Plaintiff said "Okay," and disappeared into the crowd. He tried to follow him but lost him, and spent 15 to 20 minutes looking for him unsuccessfully.

The witness went back to the apparatus about 1:30 A.M., and called the Division Marshal to tell him that he was going to suspend plaintiff, but the Marshal was not in. He remained at the apparatus, awake, until approximately 3:45 A.M., when he next saw plaintiff. Plaintiff was with Marshal Rice and was sitting on the floor in front of the apparatus, with a cut over his forehead, nose bleeding, and clothing torn. Plaintiff explained that he had been assaulted by four Mexicans upon leaving the washroom to which he had gone after

returning to his apparatus. Plaintiff was then taken to the hospital.

Plaintiff knew of the order to remain on the apparatus. Men on such detail must stay within five to ten feet of their equipment. There was a washroom 30 to 40 feet from the apparatus which witness had used that night and it was not too dirty. He did not know where plaintiff was between 1:30 A.M. and 3:45 A.M. Plaintiff belonged at the rig where the witness was during that time. If there was a fire, the Company getting the alarm would blow the siren. He doubted that a siren could have been heard by someone in Donovan Hall that night, due to the general noise and the band.

*Carlyle Jakovec*, for the Department: He is a Fire Department Lieutenant assigned to Donovan Hall on May 7. About 3:30 A.M., after the dance broke up, they moved their equipment back to Donovan Hall. About 200 feet away, he saw plaintiff being escorted out of the women's washroom by three or four male Mexicans. He turned away, and then a fireman said, "look at him." Whereupon, he turned back, heard some women yelling something, and saw plaintiff running north about 50 to 60 feet away, with the men following close behind him. They caught plaintiff, and the witness yelled, "Stop." Plaintiff tore loose and continued north. He figured that plaintiff had gotten away, and decided not to "make an incident out of it." About ten minutes later, he was told by the police that plaintiff had been "beat up and hurt."

There was a general order not to go into Donovan Hall that night; however, he and his two men had been expressly assigned there by the Chief. There were three apparatuses at the Amphitheatre. He had seen plaintiff in Donovan Hall earlier that night about 8:00 or 8:30 P.M. He thought a siren could not be heard in Donovan Hall because of the three Mexican bands. His men normally used the washroom plaintiff used.

*Jake Kushner*, for the Department. He is a Fire Engineer who was assigned to the same apparatus as plaintiff on the night in question in Exhibition Hall. He arrived on duty ten minutes before midnight and saw plaintiff, who was sitting with the engineer on duty. Plaintiff told him he was going to take a walk. The Lieutenant came there and then left, saying he was going to look for plaintiff. The witness stayed on the apparatus and did not see plaintiff until two or three hours later when plaintiff was on the floor. He may have dozed off during the time he was on the truck.

During several previous assignments he had been given an order not to enter Donovan Hall. He understood that if a show was going on, the men could look at it, but had to stay within sight of the apparatus at all times.

*Robert Bokowski,* in his own behalf: On May 7, 1967, he was assigned to Fire Pressure Unit 11 in the Exhibition Hall at the Amphitheatre from 4:00 P.M. to 8:00 A.M. the following day. Lt. Augustine was in charge when he came on duty, and did not instruct him to stay out of Donovan Hall. No one ever told him to stay out of Donovan Hall. He was also not instructed by either the Chief or Lt. Augustine not to walk around. He saw Lt. Lentz that day at the south end of Donovan Hall on the west wall. Lt. Lentz instructed him to return to the rig, which he did. Lt. Lentz was not there when he returned, and he did not see him between 1:30 and 3:45 A.M. He saw Engineer Kushner in the cab but did not bother him.

He had a cold, felt feverish, and had diarrhea which caused him to go back and forth to the washroom, which he found filthy, so he used a clean one in Donovan Hall. There were no women in the washroom.

He stayed in Donovan Hall for a short time, walking around, and talked with about seven firemen. He returned to his rig after a few minutes and sat behind it where it was warmer. The longest he was away from his apparatus was 15 to 20 minutes and could have been back to his rig, which was about 100 yards away, within 15 seconds in case of an alarm. He could see his rig, if he looked, from where he was in Donovan Hall. He listened to the music at the dance and knew that intoxicating beverages were served in Donovan Hall in set-ups. Liquor was not being sold. He imagined they were selling beer, but he didn't see it being sold and he didn't have any. He had an electric scooter which he used to circle around to pass the time. The next time he left the apparatus was when he went for a sandwich and seltzer in Donovan Hall. In all, he went to Donovan Hall three times, once for the sandwich and twice to listen to music, staying 15 or 20 minutes each time. He testified additionally that he was at the dance about one-half the time, and it was possible that he was not at his rig between 1:30 and 3:00 A.M. He was back at the apparatus about 2:30 or 3:00 A.M. He also visited another apparatus about 200 feet from his own, and was in the immediate area of his rig between 12:00 and 2:00 A.M.

At one point, he was gone for about half an hour to the washroom. The washroom he was in could have been a women's washroom. He had a bad cold, and the lights were out. Nobody, however, was in there. He was there for half an hour when he heard some noise and left the washroom. As he came out, someone said, "What are you doing here?" He walked away and did not have an altercation with any of the people attending the dance on that day. Following the night in question, plaintiff spent seven days in the hospital.

■ Plaintiff's principal contention is that the evidence does not sup-

port the Commission's conclusions. The duty of a reviewing court in this situation is to examine the entire record to determine whether the findings of the administrative body on questions of fact are contrary to the manifest weight of the evidence. *Dorfman v. Gerber*, 29 Ill.2d 191, 196; Ill. Rev. Stat. 1967, ch. 110, par. 274.

■ Two of the findings, that plaintiff was guilty of neglect of duty and absent from duty without permission, are related and are supported by substantially the same evidence. Lt. Lentz testified that he gave plaintiff a direct order to return to his apparatus or face suspension, and that plaintiff failed to do so. Plaintiff admitted being in Donovan Hall, at least 100 yards from his equipment, on three occasions for at least 15 or 20 minutes each time, listening to music and getting a sandwich. He also testified that he may not have been at his rig at all between 1:30 and 3:00 A.M. Although he testified that he could see his rig from where he was in Donovan Hall, he admitted that he was not always looking at it, and was riding on a scooter along the sides of the dance. We note that he contradicted himself a number of times during his testimony concerning his presence at his apparatus during the time in question. His excuse for using the more distant washroom in Donovan Hall was refuted by Rice and Lentz, who found the washroom near plaintiff's equipment to be sufficiently clean for use. Both Lieutenants Lentz and Jakovec testified that a siren probably could not have been heard in Donovan Hall. Plaintiff did not deny that he was found in an injured condition by Marshal Rice, or that he then spent a week in the hospital, although he did deny participation in any altercation. Considering the evidence as a whole, and recognizing that it is the province of the Commission to judge the credibility of the witnesses, we conclude that the findings of the Commission that plaintiff was absent from duty without permission and that he neglected his duty were supported by the manifest weight of the evidence. *Crepps v. Industrial Com.*, 402 Ill. 606, 615.

■ The other finding of fact was that plaintiff was guilty of entering a place where intoxicating liquors were sold. In this connection, Lt. Lentz testified expressly that intoxicating liquor was being sold in Donovan Hall during the dance. Plaintiff testified that liquor was served in the form of set-ups with bottles on the tables. He testified that he imagined beer was being sold, though he didn't see any being sold and did not have any. Again, the question of credibility of witnesses being a matter for the Commission, we cannot say that its finding on this point is contrary to the manifest weight of the evidence.

■ Concerning plaintiff's contention that the punishment imposed was too harsh, surely the penalty was not arbitrary or capricious in the light of the evidence. And, as this court said in *Nolting v. Civil Service*

*Commission,* 7 Ill.App.2d 147, 162-163: "If the court is to substitute its judgment for the judgment of the Civil Service Commission and of the Commissioner of Police as to disciplinary action that should be taken, it would in effect be substituting judicial discipline without responsibility for executive discipline with responsibility. The ultimate effect of such action would be a breaking down of the discipline and morale of the Police Department. Courts must accept the honest judgment of the Chief of Police and the Civil Service Commission, those arms of the executive department charged with administration of the police, with respect to the proper discipline to be enforced when charges have been proved."

The judgment of the circuit court is affirmed.

Judgment affirmed.

DRUCKER and LORENZ, JJ., concur.