BEARL L. HOUSTON, Plaintiff-Appellant, v. QUINCY POST 5129, Veterans of Foreign Wars, *et al.*, Defendants-Appellees.

Fourth District   No. 4—89—0177

Opinion filed September 14, 1989.

David E. Rapoport, of Katz, Friedman, Schur & Eagle, of Chicago, for appellant.

Babette B. Rokusek, of Keefe, Gorman & Brennan, of Quincy, for appellees.

JUSTICE LUND delivered the opinion of the court:

Plaintiff was injured when a bingo sign fell on him at the Veterans of Foreign Wars (VFW) hall. Plaintiff filed suit against the VFW and another member of the organization alleging negligence. Upon motion of the VFW, the trial court dismissed the lawsuit against VFW ruling, as a matter of law, plaintiff was an employee of the VFW at the time of the injury and his suit was therefore barred by the exclusive remedy provisions of the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1987, ch. 48, pars. 138.5, 138.11). On appeal plaintiff contends the trial court erred in its determination that, as a matter of law, he was an employee of the VFW. We agree and reverse.

The facts may be gleaned from plaintiff's complaint and the various pleadings attendant to defendant's motion to dismiss under section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—619).

Plaintiff, a member of the bingo committee of the VFW, was helping conduct a bingo game on the VFW premises on September 8, 1987. His duties included calling the bingo numbers and straightening up the premises after the game concluded. During the cleanup process, a nine-foot-long, four-foot-high, one-foot-thick bingo sign, weighing approximately 200 pounds, fell on him, severely injuring his left arm.

Claimant had been a member of the bingo committee for approximately two years prior to the accident and had worked the games periodically selling bingo cards, calling the numbers, and cleaning up the tables and stage from which the sign which injured him fell. In return for this activity, claimant received a $4-per-night credit toward his lifetime VFW membership dues. This credit had been instituted approximately one year before the injury when a new bingo chairman was selected by the organization. Prior to that time, bingo committee members who worked the games received nothing in return for their services. Plaintiff had performed this same sort of volunteer work for

the Eagles and Elks Clubs during the previous 15 years but no monetary remuneration of any sort was provided him by those organizations.

The VFW's motion to dismiss alleged claimant was an employee at the time of the injury by virtue of the credit toward dues payment provided him for services. In addition, defendant maintained it controlled and supervised claimant's work because the bingo committee chairman assigned specific duties to the various members who worked the bingo games. This assertion was substantiated by the deposition of codefendant Jack Wolkitt, who testified the bingo committee chairman expressly assigned him specific tasks. He was also told by Wolkitt he would be replaced if those tasks were not performed satisfactorily. Wolkitt received 50¢ an hour for his services which sum was applied as a credit toward dues or items which could be ordered through the VFW catalog. Defendant also presented the affidavit of the deputy commander of the post which stated a workers' compensation policy purchased by defendant was in effect on the date of the accident.

In contrast, plaintiff stated in his affidavit in opposition to the motion to dismiss that no member of the bingo committee had particular duties and all members would help out whenever assistance was needed. Similarly, plaintiff maintained no one was given instructions on what needed to be done since all members knew what was required of them and no members of the committee were under the direct supervision of the bingo chairman. Plaintiff also averred he never expressly or impliedly, orally or in writing, agreed to enter into a contract for hire as an employee of the VFW and never considered himself as such. Finally, plaintiff stated he was not on the VFW payroll, never had income or social security taxes deducted by the organization, and did not fill out any government-required employment forms.

In determining claimant was an employee, as a matter of law, the trial court relied on the following factors: claimant received a $4 credit per night toward his lifetime membership, defendant Wolkitt established he held a comparable remunerated position while both worked under the direction of the bingo committee chairman. Upon this basis the trial court dismissed the complaint as to VFW. We note, parenthetically, the allegations of the complaint directed to defendant Wolkitt are not before us on this appeal.

A motion for involuntary dismissal under section 2—619(a)(9) is properly brought to determine questions of employment and the scope of employment such as those presented here. (*Kinney v. Continental Assurance Co.* (1976), 42 Ill. App. 3d 263, 356 N.E.2d 131.) As

the historical and practice notes to that section indicate:

"The purpose of this section is primarily that of affording a means of obtaining at the outset of a case a summary disposition of issues of law or of easily proved issues of fact, with a reservation of jury trial as to disputed questions of fact." (Ill. Ann. Stat., ch. 110, par. 2—619, Historical and Practice Notes, at 662 (Smith-Hurd 1983).)

Unlike a motion for summary judgment, upon which the trial court is not permitted to decide disputed questions of fact, section 2—619(c) provides that "[i]f a material and genuine disputed question of fact is raised the court may decide the motion upon the affidavits and evidence offered by the parties." Ill. Rev. Stat. 1987, ch. 110, par. 2—619(c); see also *North Park Bus Service, Inc. v. Pastor* (1976), 39 Ill. App. 3d 406, 349 N.E.2d 664.

■■ ■ The definition of "employee" in the Workers' Compensation Act makes it clear that the basis of the relationship is a "contract for hire, express or implied, oral or written." (Ill. Rev. Stat. 1987, ch. 48, pars. 138.1(a)(2), (b)(2).) The existence of such a relationship is determined by an application of the principles governing the formation of other contracts and must reflect a meeting of the minds expressed by some offer on the part of one to employ or to work with another and an acceptance on the part of the other. (*Crepps v. Industrial Comm'n* (1949), 402 Ill. 606, 85 N.E.2d 5.) One does not enter the employ of another without at least an implied acquiescence in the relationship. To thrust upon a worker an employee status to which he has never consented might well deprive him of valuable rights under the compensation act, notably the right to sue his own employer for common law damages. (*McHugh-Brighton v. Industrial Comm'n* (1969), 42 Ill. 2d 52, 245 N.E.2d 480.) No single fact controls the existence or nonexistence of an employment relationship. Many factors, such as the right to control the manner in which the work is done, the method of payment, the right to discharge, the skill required and the work done, and the furnishing of tools, material, and equipment, have evidentiary value and must be considered. (*Village of Creve Coeur v. Industrial Comm'n* (1965), 32 Ill. 2d 430, 206 N.E.2d 706.) Significantly, the supreme court has stated the existence of such a relationship is, in every case, primarily a question of fact and can only become a question of law where there is no conflict in the evidence and but one conclusion can reasonably be drawn therefrom. *Crepps*, 402 Ill. 606, 85 N.E.2d 5.

■ Under this standard we conclude the trial court erred in determining claimant was an employee of the VFW, as a matter of law.

The status of members of volunteer organizations is discussed in some detail by Professor Larson. Examination of this aspect of workers' compensation law reveals the issue is not free from doubt:

"A rather shadowy but nevertheless real line separates the true gratuitous employment situations from those in which the 'payment' takes the form of discharging an obligation of substantial cash value voluntarily assumed. The most familiar example of the latter category is that of the church member who 'works out' his pledge toward construction of a church. There are two ways to look at such a relationship. One is to say, as New Jersey has held in the case of a trustee working off his church construction pledge at the rate of $1.50 an hour, that this is merely a case of donating services and hence not a contract of hire in the compensation law sense. [*Armitage v. Trustees of Mount Fern Methodist Episcopal Church* (1954), 33 N.J. Super. 367, 110 A.2d 154.] The other is to say that, in effect, the worker *is* being paid, in that he is receiving credit against an obligation. To reach this result it is only necessary to conceive of the process in two stages rather than one. The first stage is the assumption of the obligation, in the form of pledging cash or services to the church. This assumption is uncoerced, but, once undertaken, is binding. Pennsylvania in this situation invoked a theory familiar to the law of charitable pledges generally when it held: 'The mutual promises made by other members *** to render services *** would be a valid consideration ***.' [*Schreckengost v. Gospel Tabernacle* (1959), 188 Pa. Super. 652, 149 A.2d 542.] The second stage is then to say that, since the obligation exists (never mind whether originally assumed voluntarily), the receipt of credit of measurable monetary value in release of that obligation is sufficiently tangible payment to support a contract of hire. ***
***

This two-stage approach can be helpful in other situations analogous to the church construction cases. For example, in an Iowa case [*Usgaard v. Silver Crest Golf Club* (1964), 256 Iowa 453, 127 N.W.2d 636] a country club had imposed on its members an assessment of either five hours of labor or five dollars. Note the similarity between this option and the option, discussed in §47.32, between paying road taxes or working them out. There is a difference of course: The club member could escape such assessments by resigning from the club, whereas resigning from taxes is notoriously difficult. Nevertheless, under

the two-stage analysis it does not really matter whether the obligation is mandatory throughout, as in the case of taxes, or quasi-voluntary, as in the case of voluntary club membership followed by mandatory assessments, or voluntary both in the sense of voluntary church membership and voluntary pledging of church contributions. What counts is that, at the time of injury, an obligation has come into force whose discharge can stand as remuneration for labor." (Emphasis in original.) 1C A. Larson, Workmen's Compensation §47.41(a), at 8—335 through 8—337 (1980).

■ As can readily be seen, depending upon the abstract principles one applies, opposite results obtain. Furthermore, in a case such as this, where the evidence is in sharp dispute, it cannot be said that only one conclusion as to the existence of an employment relationship can reasonably be drawn within the meaning of *Crepps*. For example, it is undisputed that the $4 credit provided to plaintiff was instituted unilaterally without any bargained-for consideration and there is no evidence the VFW could not unilaterally discontinue the practice if it chose without any recourse afforded to plaintiff. In addition, although there was testimony the bingo chairman assigned particular duties to particular individuals, which, to a certain extent, implies the right to control the performance of those duties, there was also evidence the members did whatever had to be done even if that meant performing tasks not specifically assigned to them. In the face of plaintiff's unrebutted assertion he never held himself out as or believed himself to be an employee of the VFW, the mere fact an agent of the VFW assigned particular duties to him and others would not negate, as a matter of law, plaintiff's assertion the work was voluntary.

■ We also believe the mere existence of a workers' compensation policy, without more, has little bearing on the issue before us. In this case, the actual policy was never before the trial court nor was it demonstrated plaintiff was considered an employee and maintained on the payroll of the VFW for the purpose of determining the premium for compensation policy coverage. While it is true a policy which insures coverage for all compensation liability without relevant restrictions is not limited to employees who are used as the basis for computing the premium (*Emma v. Norris* (1970), 130 Ill. App. 2d 653, 264 N.E.2d 573), the fact a putative employer does not include an employee within the group used to make that determination is relevant evidence tending to show that the employer did not consider the individual to be an employee. (*De Rosa v. Albert F. Amling Co.* (1980), 84 Ill. App. 3d 64, 404 N.E.2d 564.) In the absence of any specifics con-

cerning the policy, no material conclusions can be drawn from this fact as to the existence of any employment relationship between plaintiff and VFW.

The cases cited by defendant in support of its position are clearly distinguishable. For example, in *Byrne v. Stern* (1982), 103 Ill. App. 3d 601, 431 N.E.2d 1073, the issue was not whether the plaintiff was an employee. Rather, the question was by whom was he employed. Similarly, in *Anderson v. Panozzo* (1979), 71 Ill. App. 3d 19, 389 N.E.2d 12, plaintiff never denied in his complaint or deposition that he was an employee of defendant. His only assertion was the facts of the case precluded this finding as a matter of law.

■ In this case, plaintiff vigorously disputes the existence of any employment relationship. The distinction is significant because in the absence of a mutual assent to enter a contract of hire, gratuitous or voluntary undertakings do not give rise to a legally enforceable claim for payment for such services arising from an implied contract since one cannot agree to be an unpaid volunteer and, after the fact, assert the existence of an implied contract of hire. *Wolverine Insurance Co. v. Jockish* (1980), 83 Ill. App. 3d 411, 403 N.E.2d 1290.

*Indian Hill Club v. Industrial Comm'n* (1923), 309 Ill. 271, 140 N.E. 871, is also inapposite. There, the supreme court found that a caddy was an employee of the golf club at which he performed his tasks under the specific direction of the golfer. In doing so, the supreme court affirmed the decision of the Industrial Commission, which concluded, on the facts, claimant was an employee. The evidence garnered in support of that conclusion indicated the caddy believed he was employed by the golf club and there was substantial evidence he worked under the direct control of the caddy master, who determined which caddies would be called to work on any specific day. The caddy master also had the exclusive right to determine who would work and the caddies had no control over those decisions. Here, in contrast, the evidence was unrebutted that members of the bingo committee could work or not work as they chose and were under no compulsion to do so. There is also no evidence approval had to be sought prior to working the games.

Finally, defendant's citation to *Village of Creve Coeur v. Industrial Comm'n* (1965), 32 Ill. 2d 430, 206 N.E.2d 706, is not controlling. In that case, a volunteer fireman was injured. The record showed the firemen were paid a flat rate of $3 for appearing at a fire. The city provided the equipment and no taxes were withheld. There was no requirement that a volunteer attend a fire call but, while at a fire, the firemen were under the direct orders of the fire chief. The

village board also had the power to discharge a fireman. The evidence also showed the village carried a compensation policy, which specifically covered firemen, and maintained payroll records showing payment to the firemen as employees. *Village of Creve Coeur* is distinguishable. The relationship between the village and the fireman was clearly intentional. Moreover, the term "volunteer" firemen, in context, obviously means "part time" firemen. In addition, as the supreme court noted, the determination by the Industrial Commission these individuals were employees was a question of fact rather than one of law. In this case, no such intent to form a relationship is clear. Also, the nature of the duties is vastly different. Calling bingo games is activity incidental to one's membership in a fraternal organization, not the undertaking of a fundamental civic function on a part-time basis.

■ Defendant's final argument is that certain alleged discrepancies between plaintiff's deposition testimony and the assertions made in his affidavit filed in response to the motion to dismiss should be taken as judicial admissions against plaintiff. We have examined these alleged conflicts and find them essentially to be semantic in nature. Even were we to conclude an actual conflict in the testimony existed which should be resolved against plaintiff, the discrepancies are not such as to be determinative of the issue raised on appeal.

From the sharply disputed evidence which was presented to the trial court, several conflicting, but nevertheless reasonable inferences as to the existence of an employment relationship can be drawn. While we express no opinion as to whether an employment relationship exists in the present case, it is clear under the supreme court standard in *Crepps*, the answer is not one of law on the record now before us.

Accordingly, the judgment of the circuit court of Adams is reversed and remanded for further proceedings.

Reversed and remanded.

SPITZ and STEIGMANN, JJ., concur.