### Joe Toto, Appellee, v. Durand & Kasper Company, Appellant.

### Gen. No. 24,441.

1. CONTRACTS, § 32*—*necessity of meeting of minds.* Although acceptance of an offer may be by acts or conduct as well as by words written or spoken, and although one who with knowledge takes the benefits of a contract is obligated thereby, there must be an apparent, if not actual, meeting of the minds of the parties on a precise and certain proposition.

2. CONTRACTS, § 44*—*when minds of parties to contract of sale to not meet.* Where the salesman of a dealer in flour took a written order from plaintiff for 300 barrels of flour at a stated price to be delivered in 50-barrel lots, and such writing recited that the contract must be signed by the buyer and salesman, and the blank space for defendant's acceptance was never signed by it, and where defendant's

manager changed the order to 150 barrels and after 11 days wrote plaintiff acknowledging receipt of the order as given and stated that it could not be accepted, but that an order had been entered for 150 barrels for delivery in 40-barrel lots, the minds of the parties never met upon the proposition of the sale of 300 barrels of flour, and the forwarding of 40 barrels prior to the letter of plaintiff was not such an act as to constitute acceptance of the original order.

3. CONTRACTS, § 44*—*what constitutes notice that offer to purchase has not been accepted.* Where an order for 300 barrels of flour to be delivered in 50-barrel lots was taken by a salesman subject to acceptance by his principal, and where the latter notified the purchaser that an order for only 150 barrels in 40-barrel lots could be accepted, the delivery of a lot of only 40 barrels operated as notice that the greater number of barrels had not been accepted.

Appeal from the Municipal Court of Chicago; the Hon. F. J. CAMP-BELL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1918. Reversed with a finding of fact. Opinion filed June 10, 1919. Rehearing denied and additional opinion filed July 10, 1919.

FREDERICK J. KASPER, for appellant.

RICE, DE BARTELO, ALLEGRETTI & SHEA, for appellee; FRANCIS B. ALLEGRETTI and JOHN F. SHEA, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

Appellee, plaintiff below, sued defendant, appellant, for damages for its failure to deliver flour as per contract. The plaintiff is a baker, and defendant a dealer in flour and other provisions. On March 29, 1917, one Iandolo, a salesman for defendant, took from plaintiff a written order for 300 barrels of Excel flour at the price of $9.25 per barrel, to be delivered 50 barrels every two weeks. The sale was for a special price.

The writing stated: "This contract must be signed by the buyer and salesman, and acceptance confirmed by Durand & Kasper Co." It was signed by the buyer and defendant's salesman, a blank space appearing

thereon for the acceptance of defendant. A copy of this written order was given to the buyer. Iandolo, as was the usual custom with such contracts, took the order to the manager of defendant's flour department, Mr. Stephan. The manager changed the order, making it for 150 barrels, to be delivered at the rate of 40 barrels every 2 weeks. Stephan testifies that he told Iandolo of the change and the reasons for it, but Iandolo does not remember this conversation. Iandolo testifies, however (and this is not denied by Toto), that he told Toto, at the time of taking the order, that it would not amount to anything until confirmed in writing.

On April 9th, defendant wrote plaintiff acknowledging receipt of his order as given "which we cannot accept. We have entered an order for you for 150 barrels of Excel Patent Flour * * * to be taken out at the rate of 40 barrels every 2 weeks * * * ." Stephan says the letter was not written sooner, because he was so busy. It was received by Toto about the 12th of April.

On March 30th, and apparently before or at the same time the written order was delivered, Iandolo made out a written memorandum which was by Stephan changed to conform to the amended order as to total amount to be delivered every 2 weeks. On April 2nd, the defendant, without the knowledge of Stephan, delivered to the plaintiff, with other goods, 40 barrels of Excel flour. The total amount of the invoice was $396.90, and plaintiff paid $300 on this account on April 18th. This was after he had received notice that the first order was not accepted.

In the usual course of defendant's business, the time within which an order for present delivery would be made depended upon the credit department. There was no market for this particular brand of flour; it was a private brand of defendant. On April 6, 1917, the quoted price advanced to $10 per barrel. There

was, thereafter, a steady advance. On June 15, 1917, it was quoted at $14 per barrel.

Twenty barrels of this flour were delivered to plaintiff on May 9th, and 30 barrels on the 16th of May. On May 18th, plaintiff with Iandolo, went to the manager and insisted that he was entitled to receive 300 barrels of flour in conformity with the order of March 29th. Thereupon Mr. Stephan notified the shipping clerk to deliver no more flour to him. Plaintiff says he demanded the balance of the flour 2 or 3 days after receiving the letter of April 9th. This was denied by Stephan, and Iandolo says he does not remember any such conversation. Plaintiff had dealt with defendant before. He says that his orders were never before confirmed by writing, but it does not appear that the contracts were similar to this one. Sometimes defendant sent him less than the amount he ordered, but at such times told him it did not have it to send. At the request of plaintiff the court held as a proposition of law that "Accepting an offer in writing to buy 300 barrels of flour at $9.25 per barrel, deliveries to be made every 2 weeks, and in which the parties to the proposed contract are named, and holding said instrument for at least 11 days before giving notice of repudiation to the offeror, together with the further act of delivering 40 barrels of flour to the offeror (this being the only order for flour, given to the offeree by the offeror in existence at the time), is such conduct on the part of the offeree as to show acceptance of the offer." The court, therefore, found for the plaintiff, and entered judgment for the difference between the quoted and contract price of the flour which was undelivered at the times at which it should have been delivered under the written order.

The ultimate question is whether there was a contract for 300 barrels of flour between the parties. If there was, it must have been through the acceptance by the vendor plaintiff of the order of the vendee of

March 29th. The mere delay in the answer could not, under these circumstances, constitute an acceptance, for the uncontradicted evidence is that it was understood that the acceptance would be by writing. We are aware of no case holding that a failure to reply, under these circumstances, would amount to an acceptance. But the plaintiff argues that the delivery of the 40 barrels of flour on April 2nd constituted an acceptance of the contract as made by the salesman. It is, undoubtedly true, that acceptance of an offer may be by acts or conduct, as well as by words written or spoken. One who, with knowledge, takes the benefits of a contract is obligated thereby, but there must be an apparent, if not an actual, meeting of the minds of the parties on a precise and certain proposition.

Leaving out of consideration the question which might arise on the record, as to whether the delivery prior to the letter of April 9th was the result of a mistake, and assuming, which is not proved, that the manager knew of and directed it, we think it was far short of being such an act as would amount to an apparent acceptance of the original order. The original order called for the delivery of the flour in lots of 50 barrels each. This delivery was of only 40 barrels. The plaintiff had a copy of the original order before him, and is presumed to have known its contents. The delivery of the lesser number of barrels would operate as a notice to him that the contract for the greater number of barrels had not been accepted. True, he was not bound to accept the lesser number, and he could have, if he saw fit so to do, returned the 40 barrels. He did not do this.

Whatever may have been the contractual obligations of the parties, we think it is clear that their minds never met upon the proposition of the sale of 300 barrels of flour. Neither one of the parties was therefore bound by said agreement. As the supposed con-

tract upon which plaintiff sues was never made, he cannot recover thereon.

The judgment will be reversed with a finding of fact.

*Reversed with a finding of fact.*

Finding of fact. We find as a fact that the written order of plaintiff, appellee, for 300 barrels of Excel flour on which plaintiff sues was never in fact accepted by defendant, appellant.

### ADDITIONAL OPINION ON PETITION FOR REHEARING.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

In his petition for rehearing, appellee says the "contract does not call for delivery of said flour in lots of 50 barrels each at any one time, but the said 50 barrels were to be delivered within 2 weeks, without regard to the number of barrels in each delivery  *  *  *  ." This is true, but the delivery of 40 barrels of flour was the only delivery made within 2 weeks after the written order was signed by appellee. The delivery therefore as made was neither an actual nor an apparent acceptance of the written order for 300 barrels of flour.

*Rehearing denied.*