St. Louis Fire and Marine Insurance Company, Plaintiff-Appellee, v. Howard P. Garnier, Defendant-Appellant.

Gen. No. 10,249.

Third District.

February 18, 1960.

Released for publication March 7, 1960.

Gillespie, Burke, and Gillespie, of Springfield (Frederick H. Stone, George B. Gillespie, and Joseph Leimkuehler, of counsel) for defendant-appellant.

James T. Londrigan, of Springfield, for plaintiff-appellee.

JUDGE CARROLL delivered the opinion of the court.

This is an action to recover damages alleged to have been sustained as the result of defendant's breach of his subrogation contract with plaintiff. Summary judgment for plaintiff was entered by the Circuit Court and defendant appeals.

The facts alleged in the complaint are in substance that on February 12, 1953, in Granite City, Illinois, defendant's automobile was damaged in a collision with an automobile driven by Donald Myrich; that said collision and resulting damage to defendant's automo-

bile in the amount of $1100 were proximately caused by the negligence of Myrich; that at the time of the accident defendant carried a policy of insurance with plaintiff which insured defendant against property damage to his said automobile; that on March 6, 1953, plaintiff paid defendant $1050, which was the amount of the loss less $50 deductible; that plaintiff salvaged the damaged automobile from which the sum of $225 was realized; that upon receipt of payment for his loss defendant signed a subrogation receipt authorizing plaintiff to settle defendant's claim for damages against Donald Myrich; that by said subrogation receipt the defendant warranted that he had not made settlement of said claim and that no such settlement would be made without written consent of plaintiff; that on July 2, 1953, the defendant without notice to plaintiff and unknown to plaintiff executed a covenant not to sue the General Casualty Company of Wisconsin, James Myrich and Donald Myrich for or on account of damages, losses or injury to property resulting from the accident occurring February 12, 1953, at Granite City, Illinois; and that in consideration of the execution of said covenant, defendant received the sum of $600. It is further alleged in the complaint that the $600 received by defendant is the property of plaintiff under the subrogation contract with defendant and that as a result of defendant's violation of said contract, plaintiff has been damaged in the sum of $825 with interest.

Copies of the subrogation receipt and covenant not to sue were attached to the complaint. The covenant follows the conventional form of such instruments and recites that defendant agrees not to sue ". . . for or on account of damages, losses or injuries to person or property, or both, either known or unknown, resulting or which may result from an accident occurring on or about the 12th day of February, 1953, at or near 26th and Cleveland Boulevard, Granite City, Il-

linois." The covenant further provides that it may be pleaded as a defense to any action instituted against Donald Myrich and in the event of a breach of said covenant authorizes an attorney named therein to appear in his behalf and dismiss any such action which would be done with the consent of the defendant, Howard P. Garnier.

The defendant answered the complaint and filed an affirmative defense alleging that he sustained personal injuries in the accident described in the complaint; that he received $600 in compromise settlement for such injuries only; that the settlement was made in the State of Missouri; that the General Casualty Company of Wisconsin, the third party's insurance carrier, knew of plaintiff's subrogation rights and therefore could take no action to prejudice the same. The plaintiff then moved the court to dismiss the affirmative defense on the ground that it failed to state a defense; that it contained allegations contradictive of the written statements in the exhibits attached to the complaint and was contrary to the parole evidence rule; and that a third party's knowledge of plaintiff's subrogation rights is not a defense to plaintiff's action. Plaintiff also moved for summary judgment and filed two affidavits in support thereof. One of these affidavits verified the facts alleged in the complaint. In the other affidavit it is stated that the Livingston Adjustment Service, which handled on behalf of General Casualty Company of Wisconsin the settlement of defendant's claim against James and Donald Myrich, had no knowledge of plaintiff's subrogation rights and could not and did not inform the General Casualty Company of Wisconsin of such rights. Both of plaintiff's affidavits show that the affiant after being sworn as a witness could testify competently to the facts therein contained.

The hearing on the motion to dismiss the affirmative defense and for summary judgment was had on

December 2, 1958, at which time no counter-affidavits were on file. On the hearing defendant orally moved for leave to file affidavits in opposition to the motion for summary judgment. The record indicates plaintiff objected to the allowance of defendant's motion and that thereupon the court took the cause under advisement. On December 5, 1958, defendant filed an affidavit verifying the matters set forth in the answer. On December 17, 1958, the court dismissed the affirmative defense and entered judgment for plaintiff in the sum of $825 and interest amounting to $223.45.

The defendant contends that the trial court erred in striking the affirmative defense and that he should be permitted to prove that the covenant not to sue pertained only to his claim for personal injuries and was not intended or understood by the parties thereto to be a release of or bar to the subrogation rights of plaintiff. The theory upon which defendant proceeds is that since plaintiff was not a party to the covenant not to sue, parole evidence is admissible to show that it was not the intention of the parties to the instrument to thereby deprive plaintiff of his subrogation rights against the defendant. Such argument overlooks the fact that plaintiff's action is for breach of the subrogation contract. By the contract the plaintiff became subrogated to defendant's claim for property damage occurring by reason of the collision of February 12, 1953, and defendant thereby warranted that he had made no settlement of said claim and that "no such settlement will be made or release given by the undersigned without the written consent of said insurance company." Defendant further agreed by his contract "to cooperate fully with said insurance company in the prosecution of such claims." Donald Myrich and his insurance company were parties to the subrogation contract and this suit is not brought against a third party.

412

Regardless of what the intention of defendant and Myrich may have been as to the effect and meaning of the covenant not to sue, such intention cannot add to or vary the provisions of defendant's contract with plaintiff. By his affirmative defense, defendant does not challenge the validity of his contract with plaintiff but states that the $600 which he received was in settlement of his claim for personal injuries only. Such statement is not an affirmative defense but constitutes only a denial of the allegations of the complaint. The additional alleged fact that at the time settlement for defendant's personal injuries was made, the General Casualty Company of Wisconsin had notice of plaintiff's subrogation rights is not a defense available to defendant. Whether or not third party's insurance company knew plaintiff had made payment under its policy could, in the absence of fraud or collusion and none is charged here, have no bearing upon the contractual relationship between plaintiff and defendant.

The covenant which defendant gave Myrich in plain and unambiguous language recites that defendant will not sue Donald Myrich for or on account of damages "to person or property or both" and that it is understood and agreed upon by defendant that said covenant "may be pleaded as a defense to any action or other proceeding which may be brought, instituted or taken" against Donald Myrich. The language used can leave no doubt but that the covenant was designed to cover all damages sustained by defendant as the result of the collision with the Myrich car.

The identical question presented by this appeal was considered in Inter Insurance Exchange of Chicago Motor Club v. Andersen, 331 Ill. App. 250. In that case Andersen's automobile which was insured by plaintiff, was damaged in a collision with the automobile of Kuntz. Andersen's hand was also injured. The

413

policy covered only property damage. Plaintiff paid Andersen $356, the amount of his damage less $25 deductible as provided by the policy. Kuntz was arrested at the scene of the accident and charged with reckless driving. Subsequently Kuntz settled with Andersen for $75 and the latter executed a release in which he acknowledged payment from Kuntz:

"In full settlement, accord and satisfaction of any and all claims which I now have or may hereafter have against Kuntz on account of an accident causing personal injury and property damage to me on the 2nd day of August, 1939."

Plaintiff, as subrogee, brought suit against Kuntz for property damage to the Andersen automobile and in the same action sued Andersen for the amount paid to him by Kuntz for property damage. Andersen's defense to the action was that he had no knowledge of the subrogation provisions of the policy; that the policy did not cover the damages for which he received $75 from Kuntz; that he did not know the policy prohibited his giving a general release; and that he released only his claim for personal injuries and property damage not covered by the policy. The record disclosed that on the trial, plaintiff objected to testimony of conversations between Andersen and Kuntz showing that the items released were Andersen's personal injuries and property damage not covered by the policy, and that this objection was overruled. The reviewing court held that since the release was clear and unambiguous, testimony tending to show the intention of the parties was inadmissible and that the release was effective to bar any action by Andersen or plaintiff as subrogee. After reviewing numerous cases dealing with the effect of the giving of a release by an insured upon his subrogation contract with the insurer, the court said:

"A reading of all of these cases indicates plainly that the purpose of the courts has been to protect the

414

subrogation rights of the insurer, whether the insurer chose to sue the wrongdoer as subrogee or to sue the insured for breach of policy, or both.

"What lack of unanimity there is arises, it seems, as to how best the protection can be given, whether by blaming the insured or wrongdoer. Andersen in this case has a contract with the insurer. Kuntz has not. He is a stranger to the contract. His settlement does not bring him into a contractual relationship with the insurer. Where he has knowledge of payment it could be said that he has *ipso facto* knowledge of the subrogated rights and thereby of the new relationship now existing between him and the insurer. On the other hand, placing the onus of protecting the insurer upon the insured, would seem more logical and certain. He has the duty of good faith whether expressed or not. He has signed and presumably read the insurance contract. The goal of prudence in one's conduct would seem to be reached more truly by making the insured duty bound to refrain from executing a release except with the approval of the insurer."

Other cases in which the rule as announced in the Andersen case has been applied, are Commercial Casualty Ins. Co. v. Leebron, 90 Pa. Super 201; Home Insurance Co. of New York v. Smith, 235 Mo. App. 552, 140 SW2d 64.

█ We think the defendant, by releasing Donald Myrich, breached his contract with plaintiff and prevented it from enforcing its subrogation rights against the third party and therefore must return the amount received for said release. Accordingly, we conclude that the trial court did not err in striking defendant's affirmative defense.

█ Defendant's argument that the covenant not to sue having been executed in Missouri, should be construed according to the law of that state is without merit. The validity of the covenant is not involved in this action the only question being the nature and

extent of plaintiff's remedy for breach of such covenant. In such case the *lex fori* governs.

■ ■ It is defendant's further contention that summary judgment was improperly entered because there were genuine issues as to the material facts. The record shows that after defendant answered the plaintiff moved with supporting affidavits for a summary judgment. Prior to or at the time of the hearing on the motion, defendant did not file counter-affidavits. Section 57 (3) of the Civil Practice Act permitted defendant to file such affidavits. By failing to thus test the sufficiency of the affidavits in support of the motion for summary judgment, defendant admitted the facts disclosed by plaintiff's affidavits. Verification of the answer after the hearing on the motion which appears to have been done without leave of court is of no significance. Where plaintiff's affidavits are sufficient, entry of summary judgment is not prevented by reason of the fact that defendant has filed pleadings which on their face set up a good defense. Killian v. Welfare Engineering Co., 328 Ill. App. 375.

For the reasons herein indicated, the judgment of the Circuit Court is affirmed.

Affirmed.

REYNOLDS, P. J. and ROETH, J., concur.