(No. 41383.—

McHUGH-BRIGHTON *et al.,* Appellants, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(John L. Vuich *et al.,* Appellees.)

*Opinion filed January 29, 1969.—Rehearing denied March 25, 1969.*

Klohr, Braun, Lynch & Smith, of Chicago, (Mark A. Braun, of counsel,) for appellants.

Van Duzer, Gershon, Jordan & Petersen, of Chicago, (John B. Van Duzer and Horace W. Jordan, of counsel,) for appellee John L. Vuich.

Arthur O. Kane, of Chicago, for appellee McHugh Construction Co.

Mr. Justice Schaefer delivered the opinion of the court:

John L. Vuich, the claimant, was injured while working as a carpenter during the construction of the Marina City apartments in the city of Chicago. An arbitrator for the Industrial Commission awarded him compensation from the James McHugh Construction Company (McHugh), and found that the Argonaut Insurance Company (Argonaut) was the insurer of the workmen's compensation liability of McHugh. The Industrial Commission and the circuit court of Cook County affirmed this decision. On this appeal, the award is contested by McHugh, Argonaut, and the Brighton Construction Company (Brighton), all three of whom contend that Vuich was an employee of a joint venture consisting of McHugh and Brighton, and not an employee of McHugh. Argonaut also contends that if McHugh, and not the joint venture, was the claimant's employer, its policy of insurance does not cover the claimant's injuries. McHugh disputes this contention.

On February 1, 1961, McHugh was awarded the contract for the construction of the two sixty-story buildings and appurtenant structures, known as Marina City. McHugh is a self-insurer under the Workmen's Compensation Act. On March 2, 1961, McHugh entered into a joint venture agreement with Brighton. Thereafter, Argonaut issued its Workmen's Compensation and Employers' Liability policy naming "James McHugh Construction Company and Brighton Construction Company, a joint venture," as the insured.

The claimant began work at Marina City on Thursday, October 24, 1963, and he worked there until the morning of October 30, 1963, when he was injured by a fall through a hole in the floor to a concrete surface, twenty feet below. That his severe injuries occurred in the course of his employment has never been disputed, and no question is raised in this court as to the extent of those injuries.

The claimant filed his application for adjustment of claim on January 29, 1964, naming McHugh as his employer, and Argonaut as its insurer. The controversy as to the identity of his employer apparently arose after he had filed a civil action to recover for his injuries. On April 26, 1965, a second application for adjustment of the claim was filed by Argonaut, which alleged that the claimant was employed by a joint venture composed of McHugh and Brighton. The claimant then amended his original application to allege in the alternative that either McHugh, or a joint venture consisting of McHugh and Brighton, was his employer. The matter proceeded to a hearing on this amended application, and the application of Argonaut was dismissed.

The basic position of the appellants on the issue of the identity of the claimant's employer is that when he started to work at Marina City, he became the employee of whatever person, firm or corporation "owned and controlled the Marina City job." And since McHugh had entered into the

joint venture with Brighton for this construction project before the claimant started work, it follows that the joint venture became the claimant's employer. Upon this thesis, no circumstance other than the fact that the claimant went to work on a job "owned and controlled" by the joint venture is significant in determining the identity of his employer.

It is true, as the appellants emphasize, that the claimant testified that during the ten years he had worked as a carpenter in the Chicago area he had never inquired into the nature of the ownership of the numerous construction firms for which he worked, and that he followed the orders of the foreman to whom he was assigned. His employment on the Marina City job, however, had not followed the usual pattern. Approximately four weeks prior to his accident he went to work for McHugh on a construction job on the south side of Chicago. As his work there neared completion, his foreman told him to report for work for a day or so at another McHugh project in a north side factory, and when that job was done, to report for work at Marina City, where there was a couple of weeks work, "and when I was through there, there was another location, and by spring they should have a permanent location for me." After he completed one day's work in the factory, his supervisor there, Tom McHugh, directed him to Al Phelan, a foreman at Marina City, and told him that several weeks employment would be available there. Phelan was employed by the McHugh-Brighton joint venture at the time of the accident, but he has continued as a regular employee of McHugh.

The claimant testified that the only sign he saw at the job site was one on the front of the project office which bore the McHugh name. Other witnesses testified to the presence of other signs with the legend "McHugh-Brighton." Most employees on the Marina City job wore hardhats. Some hats bore the name McHugh; others bore no name.

While the claimant was paid with checks bearing names of both firms, he did not receive his first check until he was in the hospital as a result of the fall for which he now seeks compensation.

The claimant defends the arbitrator's conclusion that he was an employee of the McHugh company, individually, on the basis that upon being transferred to the Marina City project, he was not informed that he had become an employee of McHugh-Brighton and, therefore, did not consent to employment with the joint venture.

The definition of "employee" in the Workmen's Compensation Act makes it clear that the basis of the relationship is a "contract for hire, express or implied, oral or written, * * *." (See Ill. Rev. Stat. 1963, ch. 48, pars. 138.1(a)2, (b)2.) The existence of such a relationship is determined by an application of the principles that govern other contracts. (*Crepps* v. *Industrial Com.* (1949), 402 Ill. 606, 614.) One does not enter the employ of another without at least an implied acquiescence in the relationship. As has been pointed out, "to thrust upon a worker an employee status to which he has never consented * * * might well deprive him of valuable rights under the compensation act, notably the right to sue his own employer for common-law damages." 1A Larson, Workmen's Compensation Law § 47.10, pp. 753-54. See also *id.* § 48.10, pp. 812-16.

The evidence before us does not indicate that the finding of the arbitrator, the commission and the circuit court was against the manifest weight of the evidence. (See *Crepps* v. *Industrial Com.*, 402 Ill. 606, 608; *Fransen Construction Co.* v. *Industrial Com.*, 384 Ill. 616, 624; *Allen-Garcia Co.* v. *Industrial Com.*, 334 Ill. 390.) The testimony did not establish that the claimant was, or should have been, aware of any change in his employment status when he left the job controlled solely by McHugh and commenced work on the McHugh-Brighton Marina City project. Mc-

Hugh's supervisory employees had directed him from one McHugh project to another, and then to Marina City. In these shifts, McHugh's degree of participation in the Marina City construction was not distinguished from its control of any of its other jobs.

The appellants emphasize that it was the claimant's past practice to accept employment without inquiry into the legal nature of his employer and to indicate his acceptance by commencing to work. But as he moved from job to job in the past he was aware of the termination of his previous employment, for new employment was found only upon his own initiative. His move to the new job in this case, however, was at the direction of agents of McHugh. To say that his commencing to work at Marina City amounted to consent to employment with the joint venture begs an essential question, for he was not aware that he was offered new employment.

The appellants cite cases from other jurisdictions in which a joint venture was found to be the employer of an injured employee. (See, *e.g., Baker* v. *Billingsley* (1956), 126 Ind. App. 703, 132 N.E.2d 273; *Fallone* v. *Misericordia Hospital* (1965), 23 App. Div. 222, 259 N.Y.S.2d 947; *Cook* v. *Peter Kiewit Sons Co.* (1963), 15 Utah 2d 20, 386 P.2d 616.) In none of these, however, were the courts concerned with the issue that is determinative upon the peculiar facts of the present case, the consensual basis of the employment relationship. The decisions cited are instructive with respect to the liability of parties to joint ventures under various statutes, but the conclusion that the claimant was an employee of McHugh makes it unnecessary to consider the status of joint ventures under the Illinois Workmen's Compensation Act.

Argonaut contends that unless the claimant was an employee of the joint venture its policy of insurance does not cover his claim. We agree with McHugh, however, that the policy covers the individual liability of both joint ven-

turers. It provides that "If the insured is a partnership or joint venture, * * * this policy applies to each partner or member thereof * * * only while he is acting within the scope of his duties as such partner or member." The precise nature of McHugh's relationship with the claimant is, of course, irrelevant to the question whether it was acting "within the scope of [its] duties" as a joint venturer. In making that determination, we need only consider whether the work being performed when the injury occurred furthered the purpose of the joint venture. That it did has not been questioned

In this court the appellants contend that the introductory language of paragraph (e) of section 8 requires that the award of 445½ weeks compensation for the employee's multiple specific losses be reduced to conform to the limitations of paragraphs (b) and (h) of section 8. (Ill. Rev. Stat. 1963, ch. 48, pars. 138.8(e), (b), (h).) It is not suggested that this contention was raised and passed on at any previous stage of the proceedings. It will therefore not be considered for the first time upon review. *Zion Industries, Inc.* v. *Industrial Com.*, 33 Ill.2d 314; *Bristol & Gale Co.* v. *Industrial Com.*, 292 Ill. 16, 25-26; *Odin Coal Co.* v. *Industrial Com.*, 297 Ill. 392; *Storrs* v. *Industrial Com.*, 285 Ill. 595.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*