WILLIAM LAFFOON, Plaintiff-Appellant, *v.* BELL & ZOLLER COAL CO., Defendant-Appellee.

(No. 73-158;

Fifth District—March 21, 1975.

*Rehearing denied April 29, 1975.*

Mr. JUSTICE G. MORAN, dissenting.

Harris and Lambert, of Marion, for appellant.

John E. Jacobsen and Terry R. Black, both of Mt. Vernon, for appellee.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

This is an appeal from a judgment of the trial court granting a motion for summary judgment in favor of the defendant-appellee and against the plaintiff-appellant.

The defendant contracted with John Refieuna of Refieuna Salvage Company for the dismantling of certain of its mining properties located at Mine No. 3 in Franklin County, Illinois. Plaintiff was an employee of Refieuna Salvage Company and was injured while working on the dismantling job. He filed an application for adjustment of claim with the Industrial Commission seeking workmen's compensation benefits. The Refieuna Salvage Company carried no workmen's compensation protection. The defendant, assuming that under section 1(a)(3) of the Workmen's Compensation Act (Ill. Rev. Stat., ch. 48, par. 138.1(a)(3)) it had an obligation to pay such benefits, paid $9,218.19 which the plaintiff accepted. Plaintiff then commenced an action for damages against the defendant alleging violation of the Structural Work Act of Illinois (Ill. Rev. Stat., ch. 48, par. 60 *et seq.*). The defendant moved for summary judgment, and it is from an order granting such judgment that this appeal was taken.

Summary judgment should have been entered only if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment or decree as a matter of law. Ill. Rev. Stat., ch. 110, par. 57(3).

The issue presented is whether defendant is an employer of plaintiff within the purview of the Workmen's Compensation Act (Ill. Rev. Stat. 1969, ch. 48, par. 138.1 *et seq.*) so as to be immune from liability for an alleged violation of the Structural Work Act as provided in section 5(a) of the Workmen's Compensation Act.

■■ Initially, defendant contends that failure of the plaintiff to file a counteraffidavit admits the facts contained in its affidavit submitted in support of a motion for summary judgment. We agree. (*Fooden v. Board of Governors of State Colleges and Universities,* 48 Ill.2d 580, 272 N.E.2d 497; *St. Louis Fire & Marine Insurance Co. v. Garnier,* 24 Ill.App.2d 408, 164 N.E.2d 625.) The defendant's motion for summary judgment and an attached affidavit asserted that defendant had contracted with Refieuna Salvage Company to demolish a building on mining premises, that plaintiff was an employee of Refieuna Salvage and sustained injuries in the performance of his work, that plaintiff filed a workmen's compensation claim against Refieuna Salvage which company carried no workmen's compensation insurance and did not pay workmen's compensation to plaintiff, and that defendant was compelled to and did pay plaintiff work-

men's compensation benefits in accordance with the provisions of section 1(a)(3) of the Illinois Workmen's Compensation Act and accordingly defendant was "an employer" and pursuant to section 5(a) of the Workmen's Compensation Act was immune from plaintiff's suit. The affidavit attached to the motion indicated that defendant had paid plaintiff workmen's compensation benefits totaling $9,218.19.

Section 1(a)(3) of the Illinois Workmen's Compensation Act provides in part:

> "Any one engaging in any business or enterprise referred to in subsections 1 and 2 of Section 3 of this Act who undertakes to do any work enumerated therein, is liable to pay compensation to his own immediate employees in accordance with the provisions of this Act, and in addition thereto if he directly or indirectly engages any contractor whether principal or sub-contractor to do any such work, he is liable to pay compensation to the employees of any such contractor or sub-contractor unless such contractor or sub-contractor has insured, in any company or association authorized under the laws of this State to insure the liability to pay compensation under this Act, or guaranteed his liability to pay such compensation."

Two questions of interpretation are presented by this section. Under its provisions, was defendant as a matter of law required to pay compensation; and if so, was defendant an "employer" entitled to the immunity provisions of section 5(a) of the Workmen's Compensation Act?

■■ Since it was uncontradicted that Refieuna carried no workmen's compensation insurance, and it is implied in defendant's affidavit that Refieuna also did not guarantee its liability, and since defendant did "directly or indirectly" engage "any contractor * * * to do any such work," there was an obligation on the part of defendant to pay workmen's compensation to the plaintiff.

Did, then, defendant's obligation to pay workmen's compensation under section 1(a)(3) of the Act make it an employer entitled to the immunity from action provided in section 5(a) of the Act. Defendant concedes that it was not the direct employer of plaintiff but argues that by reason of its payments of workmen's compensation benefits under section 1(a)(3) of the Act it became the "statutory employer" of plaintiff and as such it is entitled to the immunity from common law or statutory action provided to employers by section 5(a) of the Act. Section 5(a) (par. 138.5(a)) provides in part:

> "No common law or statutory right to recover damages from the employer, * * * for injury or death sustained by any employee while engaged in the line of his duty as such employee,

other than the compensation herein provided, is available to any employee who is covered by the provision of this Act * * *."

There are no Illinois cases directly on the issue, but we find the case of *Baker & Conrad, Inc., v. Chicago Heights Construction Co.,* 364 Ill. 386, 4 N.E.2d 953, close and persuasive. That case involved a question of whether a "statutory employer" who had been required to pay workmen's compensation to a person not directly his employee by reason of the failure of the subcontractor to procure insurance was the "employer" of such person for purposes of subrogation under section 31 (now section 1(a)(3)) of the Act. The Supreme Court held that such person was the employer, stating:

> "The employer here contemplated may be the immediate employer or one of a succession of employers engaged in the original undertaking, or some part thereof, who has paid the compensation for the injuries to or death of the workman. For the purpose of the act, if not the immediate employer he may be called a 'statutory employer.' * * * If there are employees of a person other than his immediate employees, it must follow that there is an 'employer' who is not an 'immediate employer,' viz., a contractual one, not supervising or coming in actual contact with the employee and with no primary authority to order his labor nor power to discharge, and not immediately liable for his wages but nevertheless an employer for the purpose of this section of the law. It is immaterial for the aim of the statute whether he be considered an 'indirect employer' or a 'statutory employer.'" (364 Ill. 386, 396-97.)

The court also stated:

> "It was not the thought of the General Assembly to impose a liability upon an employer for compensation under section 31 regardless of the degree he occupied in the subdivision of contracts under which the work was undertaken, nor how far removed from being the person who in fact employed the laborer, without affording such employer an opportunity for reimbursement and subrogation in those instances where the compensation paid by him arose out of injuries to or death of the workman caused by the negligence of some other contractor or a third person." 364 Ill. 386, 397-98.

With respect to the question whether or not a "statutory employer" is entitled to the immunity provided in section 5(a), there is again no Illinois authority directly in point, though it might forcefully be argued from *Baker* that if a "statutory employer" is entitled to the subrogation provision of the Workmen's Compensation Act, such categorization

should also entitle him to the benefits or subject him to the burdens of other provisions of the Workmen's Compensation Act.

Cases are not wanting from other jurisdictions supporting the theory that a "statutory employer" who has been required to pay workmen's compensation is entitled to immunity from a common law action. Basically there are two types of statutes imposing liability or potential liability upon the "statutory employer." In some states the liability imposed is termed "primary" or "concurrent," and under this type of statute the "statutory employer" is liable for workmen's compensation equally with the common law employer, and the employee generally has the choice of claiming benefits from either. The cases under such statutes consistently grant immunity from common law suit to the statutory employer. Examples of cases from primary liability states are *State ex rel. Hubert v. Benjamin F. Bennett Building Co.* (1928), 154 Md. 159, 140 A. 52, 55 (1928); *Swartz v. Conradis* (1929), 298 Pa. 343, 148 A. 529; *Fox v. Dunning*, 124 Okla. 228, 255 P. 582 (1927); *Evans v. Newport News Shipbuilding & Dry Dock Co.* (E.D. Va. 1965), 243 F. Supp. 1017, *affirmed* (4th Cir. 1966), 361 F.2d 364; *Whitaker v. Douglas* (1956), 179 Kan. 64, 292 P.2d 688.

■■ The second type of "statutory employer" statute imposes "secondary" liability on the remote or statutory employer. This is the type of statute Illinois has and it imposes liability on the remote employer only if the contractor or subcontractor has in fact failed to provide workmen's compensation protection. There is a split of authority between the States having secondary liability statutes as to whether the remote employer is immune from common law suit when the contractor or subcontractor does in fact have workmen's compensation protection and therefore the remote employer does not have to pay workmen's compensation benefits. There is, however, no disagreement that the remote employer is immune from common law suit under such statutes where he does in fact pay workmen's compensation benefits. For example, in *Burk v. Cities Service Oil Co.*, 266 F.2d 433 (10th Cir. 1959), construing Oklahoma law, it was held that a secondary liability statute served to bar the remote employer from a common law suit even though the remote player does not pay workmen's compensation benefits. But such rule is not followed by all jurisdictions which have secondary liability statutes. Some courts hold that immunity from common law suit attaches only where the statutory employer actually pays workmen's compensation benefits. For example, in *Mosley v. Jones*, 224 Miss. 725, 80 So.2d 819 (1955), a case very similar on its facts to this one, the employee of an independent contractor hired by the principal employer was injured and his direct employer had not

secured workmen's compensation coverage. The principal employer was exposed to workmen's compensation liability and pleaded this fact in bar of a common law suit which was brought by the injured workman against the principal employer. The court held the workmen's compensation remedy was exclusive and that the principal employer was not a "third person" within the meaning of the workmen's compensation statute, since, by being required to pay workmen's compensation, he was the "statutory employer."

■■ As indicated above, we find no cases under either the primary or the secondary type statutes which deny immunity from common law or statutory liability to a remote employer who has actually paid workmen's compensation to an injured employee. There is no question that an injured employee can recover workmen's compensation benefits and also recover under the Structural Work Act, but under the law as we perceive it he may not recover both from the same person or entity. The plaintiff here accepted his status as a statutory employee of defendant when he collected workmen's compensation from defendant. Such benefits were granted him by the statute. The defendant, having paid plaintiff's workmen's compensation claim, is now entitled to the immunities from common law or statutory liability afforded by section 5(a) of the Workmen's Compensation Act.

■■ Workmen's compensation acts were designed to serve a social and economic purpose. They were intended to eliminate certain common law defenses to recovery by an employee, but in return for his ability to recover regardless of fault the amount which could be recovered was limited, depending upon the type and extent of injury. In return for his liability to compensate employees regardless of fault the employer was granted immunity from an additional common law tort or statutory action. If in any particular case the policy of the law is achieved, that is if the employee is in fact paid workmen's compensation in accordance with the laws and regulations applicable to his case, then it should not matter whether the immunity arising from this payment inures to the benefit of his immediate employer or to the benefit of a more remote "statutory employer" who has paid the workmen's compensation claim.

■■ A liberal interpretation has often been pronounced for both the Workmen's Compensation Act (*e.g., Vaught v. Industrial Commission,* 52 Ill.2d 158, 287 N.E.2d 701) and the Structural Work Act (*e.g., Crafton v. Lester B. Knight & Associates, Inc.,* 46 Ill.2d 533, 263 N.E.2d 817). Nevertheless, we cannot say that under the circumstances here present it was the legislative intent that a plaintiff was to be given the benefit of both Acts or a choice between them, particularly after the employee has accepted benefits of the Workmen's Compensation Act from one he now

alleges is responsible under the Structural Work Act. In our opinion the latter enactment of section 5(a) of the Workmen's Compensation Act indicates a legislative intent to the contrary. We think this interpretation is buttressed by the following language of our supreme court in *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.*, 22 Ill.2d 305, 318, 322, 175 N.E.2d 785:

> "From this statutory history it is evident that the Scaffold Act, originally enacted to give some protection to structural workers engaged in extrahazardous work at a time when there was no workmen's compensation act is now relied upon as an additional remedy against third persons.

> \* \* \*

> \* \* \* under our view, the Scaffold Act may not always afford an injured party a remedy in addition to workmen's compensation. Since the Scaffold Act was enacted prior to the Workmen's Compensation Act, it is obviously not designed to provide any such additional remedy, and any lessening of the effectiveness of the Scaffold Act is due, not to our construction of it, but to the provision in the Workmen's Compensation Act making it the exclusive remedy against the employer. It is not the province of this court to distort the Scaffold Act in order to insure double remedy, and authorize by indirection what the Workmen's Compensation Act prohibits by a direct action."

Judgment affirmed.

EBERSPACHER, J., concurs.

Mr. JUSTICE GEORGE J. MORAN, dissenting:

I do not agree that plaintiff is an employee of Bell & Zoller so as to preclude him from suing under the Structural Work Act (Ill. Rev. Stat., ch. 48, par. 60 *et seq.*). In the recent case of *M & M Electric Co. v. Industrial Com.*, 57 Ill.2d 113, our supreme court reiterated the established principle of law that a contract of employment cannot exist without the consent of both parties, saying at page 119:

> "It is not possible for a contract of employment to exist without the consent of the parties, and as pointed out by this court in *McHugh-Brighton v. Industrial Com.* (1969), 42 Ill.2d 52, 56, an employee cannot be deemed to have accepted a change in employment if he does not know that it has been offered."

The *McHugh-Brighton* case stated this principle even more clearly at 42 Ill.2d 52, 56:

> "The definition of 'employee' in the Workmen's Compensation

Act makes it clear that the basis of the relationship is a 'contract for hire, express or implied, oral or written, * * *.' (See Ill. Rev. Stat. 1963, ch. 48, pars. 138.1(a)2, (b)2.) The existence of such a relationship is determined by an application of the principles that govern other contracts. (*Crepps v. Industrial Com.* (1949), 402 Ill. 606, 614.) One does not enter the employ of another without at least an implied acquiescence in the relationship. As has been pointed out, 'to thrust upon a worker an employee status to which he has never consented * * * might well deprive him of valuable rights under the compensation act, notably the right to sue his own employer for common-law damages.' 1A Larson, Workmen's Compensation Law § 47.10, pp. 753-54. See also *id.* § 48.10, pp. 812-16."

In *Crepps v. Industrial Com.*, 402 Ill. 606, our supreme court said at page 614:

"The relationship of employer and employee is a contractual relationship, the requisites to the formation of such relationship being determined by an application of the principles governing the formation of other contracts. The relationship is a product of mutual assent, that is, of a meeting of minds expressed by some offer on the part of one to employ or to work for the other and an acceptance on the part of the other."

The majority opinion reads into the Workmen's Compensation Act language that is not there, when it makes Laffoon an employee of Bell & Zoller without his consent, so as to deprive him of his right to sue under the Illinois Structural Work Act. The United States Supreme Court used just the opposite approach in the case of *Industrial Commission of Wisconsin v. McCartin*, 330 U.S. 622, 628, 91 L.Ed. 1140, 1144, 67 S.Ct. 886, 889:

"And in light of the rule that workmen's compensation laws are to be liberally construed in furtherance of the purpose for which they were enacted [citation], we should not readily interpret such a statute so as to cut off an employee's right to sue under other legislation passed for his benefit. Only some unmistakable language by a state legislature or judiciary would warrant our accepting such a construction."

To support its conclusion, the majority cites only one Illinois decision, *Baker & Conrad, Inc. v. Chicago Heights Construction Co.*, 364 Ill. 386, 4 N.E.2d 953. That case holds that a "statutory employer" was an "employer" for purposes of the employer's right under the Act (then in force) to be subrogated to the insured employee's claim against some other person legally obligated to pay damages. On this flimsy basis the majority concludes that the so-called "statutory employer" should enjoy the im-

munities of section 5(a), heretofore uniformly interpreted to apply only to the actual employer.

It does so while conceding that the defendant (or "statutory employer," as one is commonly called when by statute he is compelled to pay workmen's compensation benefits to the employees of another), is not the employer. The majority rests its case on the narrow ground that in "accepting" workmen's compensation benefits, the plaintiff has "accepted" the status of "statutory employee" and reads into this creation of legal fiction a voluntary waiver by an employee of his common law rights. This is grave error.

By broadening section 5(a) to include "statutory employers," the majority is creating an impermissible classification violative of the equal protection and due process guarantees of the Federal and State constitutions (U.S. Const. amend. XIV, § 1; Ill. Const. art. I, § 2), as well as the "certain remedies" provision of the Illinois Constitution (art. I, § 12).

Indeed, this unwarranted interpretation of section 5(a), would thrust the posture of the law back to the days preceding *Grasse v. Dealer's Transport Co.*, 412 Ill. 179, 106 N.E.2d 124, *cert. denied*, 344 U.S. 837, 97 L.Ed. 651, 73 S.Ct. 47. The Workmen's Compensation Act at that time permitted a common law action by an injured workman aaginst a third-party defendant who was not bound by the Workmen's Compensation Act, but barred such an action where a third-party defendant was bound by the Act, notwithstanding no contractual relationship existed between the parties. The *Grasse* court held this unconstitutional.

In the case at bar, the majority would permit an injured person employed by a subcontractor who had provided himself with workmen's compensation insurance to sue a third-party contractor on the job. Yet it would deny the same right of action under the same circumstances to an employee of a subcontractor who did not provide himself with such insurance.

I fail to perceive a rational basis for distinguishing the Act as interpreted by the majority with the interpretation placed by the court on the Act as struck down in *Grasse*.

Addressing itself to what I consider a closely similar factual circumstance, the court said in *Grasse*:

> "* * * it is evident that the classification of injured employees provided therein is arbitrary and in no way promotes any of the objectives of the act. All employees entitled to compensation for injuries sustained in the course of their employment and caused by third persons are not treated alike. Those injured by third party tort-feasors bound by the act are not entitled to common-law damages from such persons, whereas those injured by third party

tort-feasors not bound by the act are allowed to institute actions for damages. Both classes of injured employees may be entitled to compensation from their own employers, so that the amount of compensation, if any, received by the injured employee is not the basis for differentiation between the classes. Nor is there any basis for differentiation from the nature of the injuries sustained, or from the activity of the employee at the time of the injury, or from any other factor ordinarily related to an injured party's right to recover damages. The sole basis for differentiation, as far as the injured employee is concerned, is a fortuitous circumstance—whether the third party tort-feasor happens to be under the act." 412 Ill. 179, 195-96.

The majority opinion in the case at bar would base the distinction on the fortuitous circumstance of whether the employer carried insurance. This is an even less durable foundation than the one rejected in *Grasse*.

The inequities inherent in the impermissible classification created by the majority are glaring. If two workmen, employed by two different subcontractors, were killed on the same jobsite by a falling beam, the family of the man whose employer carried workmen's compensation insurance could sue the general contractor under the Structural Work Act. But the family of the workman who was employed by a subcontractor with no such insurance (or whose policy had lapsed for nonpayment of premiums) would be limited to workmen's compensation benefits from the same general contractor.

The distinction becomes even less tenuous when we consider that the plaintiff's employer would remain liable to pay such benefits to the employee under Section 3 of the Act, whether insured or not. And there is no showing on this record that Refieuna was not financially able to do so. Moreover, the Act permits a so-called "statutory employer" to recover from the uninsured subcontractor (direct employer) engaged by him any amounts paid to such subcontractor's employees. Without belaboring the point, the present statute, as did the one struck down in *Grasse*, also places an obligation on the plaintiff's employer to provide the workmen's compensation benefits, and section 1(a)(3) does not alter this obligation. The requirement imposed by that section on the "statutory employer" is an addition to, not a substitute for, the obligation imposed on the plaintiff's direct employer. Nor is it dependent on the insolvency of plaintiff's employer or on any other circumstance that might render him incapable of carrying out his statutory duty.

It should be evident that those engaged in structural work could easily subvert the purposes of the Structural Work Act by making the general

contractor the paymaster of workmen's compensation benefits for all the trades "having any direct connection" with the construction activities (*Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.*, 22 Ill.2d 305, 175 N.E.2d 785; *Larson v. Commonwealth Edison Co.*, 33 Ill.2d 316, 211 N.E.2d 247), thereby shielding every contractor on the jobsite from third-party liability under the Structural Work Act. The majority opinion thus charts the path for those employers who desire to evade the Structural Work Act.

In addition to these fatal constitutional infirmities, granting immunity to "statutory employers" violates the underlying purposes of both the Workmen's Compensation Act and the Structural Work Act.

Both the Structural Work Act and the Workmen's Compensation Act are intended to provide a measure of protection to workmen and their dependents. The former is intended to provide for the *safety* of the men engaged in the work (*Schultz v. Henry Ericsson Co.*, 264 Ill. 156, 164, 106 N.E. 236, 239; *Gannon v. Chicago, Milwaukee, St. Paul and Pacific Ry. Co.*, 22 Ill.2d 305, 175 N.E.2d 785, 792),whereas the latter is intended to provide *financial security* for the workmen and their dependents in the event of injury or death (*Baker & Conrad, Inc. v. Chicago Heights Construction Co.*, 364 Ill. 386, 4 N.E.2d 953; *Wangler Boiler & Sheet Metal Works Co. v. Industrial Com.*, 287 Ill. 118).

To give maximum effect to the two provisions—which it is our function to do—it seems clear that section 1(a)(3) was intended to insure recovery of workmen's compensation benefits *to workmen and their dependents* in the event the employer is uninsured for such benefits. To carry out this laudatory objective, the legislature placed the burden on "anyone" employing a contractor or subcontractor to make sure that such contractor or subcontractor carries workmen's compensation insurance, at the risk of becoming personally liable to pay the same to injured employees of the latter. This *is* too clear to permit any other construction. We stop here.

The majority's needless tampering with section 5(a) construes the Act to *reward* "anyone" hiring a contractor who is without workmen's compensation insurance by immunizing "anyone" so doing from third-party liability. I find this incredible.

Clearly, the legislature did not intend to give "statutory employers" a bonus by virtue of section 1(a)(3) as the majority holds. The interpretation invites total emasculation of the Structural Work Act. Industrious, indeed clever, employers or their insurers could simply see to it that the only contractor on the construction project carrying workmen's compensation insurance would be the general contractor, thus in effect shielding

the entire phalanx of other contractors from third-party liability. For all we know, this was the scheme adopted by Bell & Zoller Coal Company in this case.

This is much the same problem our supreme court wrestled with in *Gannon*, which heretofore preserved the workman's rights under the Structural Work Act against anyone but his "employer." The *Gannon* court said:

> "Any employee or other person injured by a wilful violation of the act by any of the enumerated persons having charge of the structural work still has an action against such party. This is a very real remedy, when we consider that structural work frequently involves the operations of several contracts or subcontractors who are each in charge of a phase of the work, and the injured person has a right of action against any one of them, other than his employer, who may wilfully violate or fail to comply with the act. [Citations.]" (22 Ill.2d 305, 322.)

With this I agree. But it is no longer a "very real remedy" if plaintiff's "right of action against any one of [the several contractors or subcontractors], other than his employer" is also eradicated by reason of his employer's failure to purchase workmen's compensation insurance, either through negligence or by acting in concert with the general and other contracts on the job.

Moreover, such a construction constitutes an amendment by implication of the salutory and beneficient provisions of the Structural Work Act. Such statutory construction is not favored. (*Dugan v. Berning*, 11 Ill.2d 353, 143 N.E.2d 547 (1957); *Buffum v. Chase National Bank* (7th Cir. 1951), 192 F.2d 58, 61; *Wilhelm v. Industrial Com.*, 399 Ill. 80, 77 N.E.2d 174, 177.) Nor is it constitutional. Ill. Const. art. I, § 2 (1970).

If the legislature intended to abolish the common law rights of employees fortuitously caught up in this quagmire, it would have specifically so provided by a suitable and proper amendment to section 5(a). As previously noted, that section, first appearing in the Act following *Grasse* as a replacement to section 29 (held unconstitutional in *Grasse*), has consistently been applied to employers and employees in their traditional sense. Such a drastic change as the majority's opinion would bring about, even if it were possible to do it constitutionally, should be made by the legislature, not by the courts.

The majority's broad statement that "there is no question that an injured employee can recover workmen's compensation benefits and also recover under the Scaffolding Act, but under the law as we perceive it he may not recover both from the same person or entity," also finds no support either in the language of section 5(a) or the cases.

In a more enlightened opinion, this court recently held that a plaintiff, who "accepted" workmen's compensation benefits from his employer, could subsequently sue his employer for Structural Work Act violations where the employer was the sole owner of the building under construction (as was defendant here) and also was one of the members of the two-man partnership erecting the building. (*Marcus v. Green*, 13 Ill. App.3d 699, 300 N.E.2d 512.) As this court said in *Marcus*:

> "We see no reason to suppose that the Workmen's Compensation Act has in any way limited the duty of an owner in charge to assure that scaffolds on construction property be kept safe. [Citation.]" 13 Ill.App.3d 699, 707.

> "Therefore * * * since the Workmen's Compensation Act provides for recovery by an employee against a third party tortfeasor, (Ill. Rev. Stat., ch. 48, § 138.5), he should be allowed to bring an action against the appellant who in a different legal capacity than that of an employer has placed himself vulnerable to liability under the Scaffold Act." 13 Ill.App.3d 699, 708.

In distinguishing the first *Gannon* case where the supreme court refused to permit an action under the Scaffold Act against the plaintiff's employer, we correctly said in *Marcus*:

> "* * * *Gannon* * * * involved an employer who was being sued under the Structural Work Act *as an employer*. The suit was properly dismissed, but the action in the instant case is not against the employer as employer. It is against an employer who is also an owner." (13 Ill.App.3d 699, 707.)

See also *Reed v. The Yaka*, 373 U.S. 410, 10 L.Ed.2d 448, 83 S.Ct. 1349, (1963), where a shipowner was held liable for the ship's unseaworthiness notwithstanding the fact that it was also liable to plaintiff under the Longshoremen's and Harbor Workers' Compensation Act.

Here, the one sought to be held liable is not even an "employer" in any sense, but merely one who by statute is at most a guarantor for the payment of workmen's compensation benefits to the injured workmen of subcontractors, to guard against default by the plaintiff's employer.

Furthermore, the majority's absorbance with the plaintiff's "acceptance" of the benefits paid by his "statutory employer" is not warranted. In the first place, the realities of Workmen's Compensation render any so-called "acceptance" illusory under settled doctrines of contract law. In the second place, to hold that such an illusory "acceptance" irrevocably binds plaintiff to an election of remedies is untenable.

The common practice in the industry is for the employer or his workmen's compensation carrier to pay health-care providers directly. Until or unless a check for disability benefits is received by the employee, he

never knows whether his employer was insured or not. Yet by force of the majority opinion, an injured workman whose medical treatment bills were paid, without his knowledge of insurance, but who received no other benefits to provide him with a clue as to whether his employer was insured, would nevertheless be barred from a third-party action. And even assuming the employee, through receipt of disability benefit checks, is aware that the payment is made by someone other than his employer it is unrealistic to hold that he voluntarily "accepted" such benefits in lieu of his third-party rights. As the supreme court recognized in *Streeter v. Western Wheeled Scraper Co.*, (1912), 254 Ill. 244, 257:

> "Notwithstanding the theoretical liberty of every person to contract for his labor or services and his legal right to abandon his employment if the conditions of service are not satisfactory, practically, by stress of circumstances, poverty, the dependence of his family, scarcity of employment, competition or other conditions, the laborer frequently has no choice but to accept employment upon such terms and under such conditions as are offered."

Against this backdrop, the majority implies that plaintiff, as a matter of law, accepted defendant's offer of Workmen's Compensation payments, and more surprisingly, that such "acceptance" evinced an objective manifestation that plaintiff "accepted" the legal consequences indulged in by the majority. As succinctly stated by the Illinois Appellate Court in *Toto v. Durand & Kaspar Co.*, 214 Ill.App. 449, 453:

> "It is, undoubtedly true, that acceptance of an offer may be by acts or conduct, as well as by words written or spoken. One who, with knowledge, takes the benefits of a contract is obligated thereby, but there must be an apparent, if not an actual, meeting of the minds of the parties on a precise and certain proposition."

No such "meeting of the minds" is supported by a scintilla of evidence in the record before us.

The majority further indicates that by "accepting" payments from the "statutory employer," the "statutory employee" has in effect elected between workmen's compensation benefits and common law damages. This too is untenable.

> "It is implicit in the doctrine of election of remedies that a plaintiff knows he has a choice of remedies. In furtherance of this it has often been held that there can be no election when the plaintiff is ignorant as to the true facts. [Citations.]" (*Household Finance Corporation v. Suhr*, 44 Ill.App.2d 292, 302. See also *Eichhorst v. Eichhorst*, 338 Ill. 185, 193.)

It is pure sophistry to hold that the plaintiff here made a choice between two known remedies.

The authorities I have quoted clearly and unequivocally hold that an employee cannot have an employer thrust upon him against his will or without his knowledge. Any employee loses certain rights when he strikes up a new employment relationship. By thrusting an employer on plaintiff whom plaintiff had not contracted to work for, the majority is depriving plaintiff of a valuable right under the Illinois Structural Work Act. The Structural Work Act is a safety statute designed to protect workmen such as plaintiff who engage in extrahazardous occupations in and around buildings. The courts have always held that it is entitled to a very liberal construction. I would not deprive one of his right to sue under this statute in the absence of clear language from the legislature.