JOHN HEBELER, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Holland Company, Appellee).

Second District (Industrial Commission Division)   No. 2—89—0615WC

Opinion filed January 15, 1991.

James C. Serkland, of Serkland & Muelhausen, of Chicago, for appellant.

Kevin Luther, and Douglas J. Pomatto, both of Heyl, Royster, Voelker & Allen, of Rockford, and Karen L. Kendall, of Heyl, Royster, Voelker & Allen, of Peoria, for appellee.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

The petitioner, John Hebeler, filed a petition for emergency hearing under section 19(b—1) of the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.19(b—1)). He claimed that his back condition of herniated nucleus pulposus with sciatica had resulted from an injury he suffered on August 7, 1987, while working for the respondent, Holland Company. The arbitrator found that the petitioner's back condition was causally connected with his work. On review, the Industrial Commission (Commission) found that while the August 7 injury had resulted in acute lumbar strain, the petitioner's subsequent activities had broken the causal chain between his injury and the November 3, 1987, diagnosis of herniated nucleus pulposus. The circuit court confirmed the Commission's decision. The petitioner appeals.

The petitioner testified that on August 7, 1987, he was changing the 45- to 50-pound bars on a stripper as part of his employment with the respondent. While he was removing the bars and carrying them into the shop, he hurt his back. He finished working, then went home. That night, his back started bothering him. On August 11, 1987, he went to see Dr. Jay Ginther. The petitioner did not work thereafter.

Pursuant to Dr. Ginther's instructions, the petitioner began a physical therapy program. While he claimed that he missed the physical therapy sessions three times at most, the physical therapist's records indicated that he was frequently absent. Further, the therapist stated that the petitioner appeared unmotivated and that it was unlikely he could only perform at the low level he demonstrated in therapy.

The petitioner admitted that between August 7 and November 3, 1987, he played pool 15 times for about 2½ hours each time and went duck hunting on a dozen occasions. The duck hunting consisted mainly of sitting in a blind he had helped construct after the injury. He also acknowledged that he tried chopping wood with an 8-pound maul, but after splitting a couple of logs quit because of the pain in his back.

He further testified that he had previously injured his back at work in 1978 and had undergone surgery. For his injury, he received a $52,500 worker's compensation award.

Dr. Ginther noted in his deposition that the petitioner's 1978 sur-

gery involved a laminectomy exploration at the L-5, S-1 disc level and the removal of a disc at the L-4, L-5 level on the left side due to a herniated nucleus pulposus. When he first saw the petitioner on August 11, 1987, he diagnosed that he was suffering from acute lumbar strain. X rays taken at the time showed old disc disease and arthritic changes, but nothing further. Dr. Ginther prescribed physical therapy and limited him to light-duty work involving no more than 10 to 12 pounds of lifting. When the petitioner's pain did not subside in the following weeks, Dr. Ginther sent him to Dr. Oliver Ancheta for neurological studies.

Dr. Ancheta examined the petitioner on October 9, 1987, and was unable to detect any objective evidence of involvement of the nerve root. He noted, however, that the subjective symptoms were referable to the L-5, S-1 nerve root on the right.

On November 3, 1987, Dr. Ginther hospitalized the petitioner for a myelogram and CT scan. They showed at the L-4, L-5 level a herniated nucleus pulposus on the right side. Based upon the petitioner's description of the lifting episode preceding his injury and on the petitioner's claim that he had had no back problems since 1978, Dr. Ginther attributed the petitioner's condition of ill-being to his work.

The petitioner's attorney posited a hypothetical question to Dr. Ginther, in effect asking whether certain activities between the August 7 injury and the November 3 diagnosis could have broken the causal chain. The hypothetical involved an individual who in October 1987 hunted ducks, chopped wood, played pool, pulled the tires off of a pickup truck, welded on a car, and moved a 600- to 700-pound safe using a dolly. Dr. Ginther stated that those activities would make it impossible to differentiate between the August and the October activities as the cause of the herniated nucleus pulposus found in November. However, he further stated that the number and duration of the activities listed in the hypothetical would be a factor in determining whether they broke the causal chain. He noted that one would have to assume, for instance, that "cutting and loading wood" meant one pickup truck load of wood.

A private investigator reported that in October 1987, he had observed a man welding beside a garage he believed was the petitioner's, though because of the mask the man wore he could not be sure it was the petitioner. He further reported that he saw the petitioner load shotguns and a cooler into a pickup and go duck hunting in a blind. He also watched the petitioner play pool, which included repeated bending at the waist. The petitioner did not appear to experience any pain or difficulty when bending over.

At the respondent's request, Dr. Norm Hagman examined the petitioner on April 11, 1988. Dr. Hagman did not offer any opinion regard-

ing whether the activities in October would have broken the causal connection between the petitioner's work injury and his subsequent condition of ill-being.

The arbitrator found that the petitioner's August 7, 1987, work injury had caused his temporary total disability from August 7, 1987, through June 7, 1988, the date of the hearing. He therefore awarded him $208 per week for 43⁴/₇ weeks, plus medical expenses of $3,481.50.

On review, the Industrial Commission found that the petitioner was temporarily totally disabled for nine weeks and was entitled to $1,905 for medical expenses. The Commission further found, however, that the petitioner had failed to prove a causal relationship between his accidental injuries of August 7 and his condition of ill-being after October 9, 1987. The circuit court found that the Commission's decision was not against the manifest weight of the evidence.

On appeal, the petitioner first argues that the Commission's conclusion that his October activities broke the causal chain between his August injury and the November diagnosis of herniated nucleus pulposus was against the manifest weight of the evidence. In particular, he contends that the evidence of causality was unrefuted since, because of the inaccuracies in the hypothetical, no weight can be given to Dr. Ginther's response to the hypothetical question.

■■ ■ Whether a causal connection exists between an accident and a condition of ill-being may be determined from medical and nonmedical evidence. (*International Harvester v. Industrial Comm'n* (1982), 93 Ill. 2d 59, 442 N.E.2d 908.) In presenting evidence by a hypothetical question, counsel propounding the question has a right to ask it, assuming only the facts as he perceives them to be shown by the evidence; opposing counsel may then challenge the controverted facts by presenting his own hypothetical question on cross-examination. (*Johns-Manville Products Corp. v. Industrial Comm'n* (1979), 78 Ill. 2d 171, 399 N.E.2d 606.) It is the function of the Commission to determine the facts and draw reasonable inferences from competent evidence. (*City of Chicago v. Industrial Comm'n* (1970), 45 Ill. 2d 350, 259 N.E.2d 5.) The findings of the Commission will not be disturbed on appeal unless they are contrary to the manifest weight of the evidence. *Morgan v. Industrial Comm'n* (1980), 82 Ill. 2d 524, 413 N.E.2d 383.

■■ Initially, we note that while the respondent's hypothetical question to Dr. Ginther contained a couple of facts not in evidence, that did not render Dr. Ginther's answer completely meaningless. For the most part, the facts contained in the hypothetical were the respondent's interpretation of disputed evidence. The petitioner could, and did, question the validity of the hypothetical on redirect examination by bringing out

that Dr. Ginther's answer would be different depending on the extent of the activities involved. In particular, the petitioner brought out that Dr. Ginther was erroneously assuming that the petitioner had chopped a pickup truck load of wood. It was for the Commission to determine the weight to be given his answer to the hypothetical in light of the actual evidence and the doctor's misunderstanding. We find no indication the Commission accorded his answer an undue amount of weight.

We further note that in the instant case the Commission was presented with a petitioner whose accident occurred on August 7, 1987, but at that time resulted only in acute lumbar strain. An October 9, 1987, neurological examination failed to show any objective symptoms of injury. A month later, he was diagnosed as suffering from a herniated nucleus pulposus with sciatica. Between the initial injury and the diagnosis of herniated nucleus pulposus, the petitioner engaged in activities requiring physical exertion and a great deal of bending at the waist. Further, he showed little motivation in physical therapy, and his therapist believed he was capable of performing better than he was.

The issue before us is whether the Commission's decision was against the manifest weight of the evidence. Given the evidence in this case, we find that the petitioner has not met this test on appeal. We conclude that the Commission did not err in finding that the petitioner failed to prove a causal connection between his work injury and his condition after October 9, 1987.

The petitioner further argues on appeal that the Commission erred in failing to strike Dr. Ginther's answer to the hypothetical question. Initially, we note that the petitioner failed to request a ruling from the arbitrator on his objection to the hypothetical, which was made during a deposition. Accordingly, he has waived this objection. See *Chicago Rotoprint v. Industrial Comm'n* (1987), 157 Ill. App. 3d 996, 509 N.E.2d 1330.

Additionally, as we noted above, the Commission, as the trier of fact, was free to determine the weight to be given to the hypothetical. (See *Johns-Manville Products Corp. v. Industrial Comm'n* (1979), 78 Ill. 2d 171, 399 N.E.2d 606.) There being no indication the Commission abused its discretion in this respect, we find no error.

The judgment of the circuit court of Carroll County confirming the decision of the Industrial Commission is affirmed.

Affirmed.

McNAMARA, WOODWARD, McCULLOUGH, and LEWIS, JJ., concur.