NORMAND GOODRICK, Appellant, v. THE INDUSTRIAL COMMISSION
*et al.* (Albert Cioni, d/b/a Granville Motor Company, Appellee).
Third District (Industrial Commission Division)  No. 3—92—0024WC

Opinion filed December 10, 1992.

R.J. Lannon, Jr., of Herbolsheimer, Lannon, Henson, Duncan & Reagan,
of La Salle, and Karen C. Eiten, of Herbolsheimer, Lannon, Henson, Dun-
can & Reagan, of Ottawa, for appellant.

George J. Picha, of Picha & Salisbury, of Rockford, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

The appellant, Normand Goodrick (the claimant), filed an application for adjustment of claim pursuant to the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1987, ch. 48, par. 138.1 *et seq.*) contending he sustained injuries on April 14, 1988, while in the employ of the appellee, Albert Cioni, d/b/a Granville Motor Company (the employer). Following a hearing, the arbitrator found there was an employer/employee relationship and awarded benefits. On review, the Industrial Commission (Commission) reversed, finding no such relationship and denied the claim. The circuit court confirmed and the claimant now appeals.

On April 13, 1988, the claimant was laid off from his job with Alverson Construction Company. The claimant was an ironworker and worked out of a local union hall. He had worked on a bridge project with Alverson for approximately 2½ months.

The claimant testified that on leaving work that day he went to the Town Club Tavern, where he called his wife to join him. After she arrived, Albert Cioni also entered the bar and sat next to the claimant. The claimant stated he had known Cioni for 17 or 18 years and that they had become close friends in recent years. According to the claimant, Cioni asked him if he was working and the claimant told him he had been laid off that day. Cioni then invited the claimant to accompany him to an automobile auction in Chicago the next day. The claimant's wife in her testimony before the arbitrator confirmed this conversation.

The claimant had accompanied Cioni to one previous auction in 1986. The record shows that if Cioni bought vehicles at the auction, those who accompanied him would be asked to drive the vehicles back to Granville. There were times when no vehicles were purchased. The record shows that commercial transport of the vehicles from Chicago to Granville would cost $100 per vehicle.

The claimant testified he had his wife drop him off at the Town Club the next morning around 7 a.m. He met Cioni there, and the two went to Cioni's business, where they were met by two other gentlemen who were also going to the auction. From there they proceeded to Cedar Point, Illinois, in Cioni's van to pick up another individual. They picked up a sixth person in Peru, Illinois, and proceeded on to the auction in Chicago.

Cioni obtained complimentary breakfast tickets at the auction for all of the men. Cioni purchased four vehicles at the auction. Cioni asked the claimant to drive a Mercury Sable back to Granville. Three of the other gentlemen drove the other purchased vehicles. All of the

drivers followed Cioni to Dunlap's Supper Club, where Cioni purchased lunch and drinks for all the men. The claimant testified he had six or seven beers while at Dunlap's.

The caravan proceeded to the Holiday Inn in Morris, Illinois, where the group stopped to use the rest room and have drinks. The claimant testified he had two beers while in Morris. The group proceeded to the Holiday Inn in Peru. After about 20 minutes at the bar, the other gentlemen left. Cioni and the claimant remained at the bar drinking. The claimant had five or six beers. Cioni and the claimant then went to the Cedar Lanes Motel in Cedar Point, where the claimant had approximately four more beers. The record shows that Cioni purchased almost all of the drinks, with one or two of the gentlemen purchasing a round of drinks along the way. The claimant did not pay for anything that day.

The claimant phoned home from Cedar Point and told his wife he would be home shortly. Cioni paid for the call. This was sometime between 8:30 p.m. and 9 p.m. The claimant was going to drive the Sable home and return it to Cioni in the morning. On his way home, the claimant was involved in a serious one-car accident in which he suffered a fractured neck. As a result, the claimant has lost the use of his legs and has only limited function in his upper extremities.

Cioni and the other witnesses at arbitration confirmed the basic series of events that day. However, Cioni testified that he did not recall speaking with the claimant on the evening of April 13, 1988. Cioni recalled that he went to the Town Club around 5 a.m. on April 14, 1988, and had some coffee. He then went to his dealership around 6:30 a.m. to put gas in his van. When he returned to the Town Club, he found the claimant sitting with two of the men who were going with him to Chicago. According to Cioni, the claimant asked him if he was going to Chicago and if he minded if the claimant went along. Pamela Grant, who was working that morning at the Town Club, testified she heard the claimant ask if Cioni was going to Chicago and whether he could go along.

The arbitrator found the claimant's version of how the trip was initially agreed upon more credible and specifically relying on *Ragler Motor Sales v. Industrial Comm'n* (1982), 93 Ill. 2d 66, 442 N.E.2d 903, found an employer/employee relationship existed. Regarding earnings, the arbitrator noted the claimant and Cioni had been good friends for a number of years and that Cioni knew the claimant was an ironworker. The arbitrator found Cioni knew the claimant had just been laid off from his job and noted that the claimant had made $18.75 an hour at this job. Based on these facts and the claimant's

1987 tax return, the arbitrator found the claimant's average weekly wage was $750.

The Commission found that based on the testimony no payment or promise of payment was ever made, nor was one expected. The Commission concluded that a gratuitous relationship existed, and that the purchase of food and drink was a gratuity and not consideration establishing a contract for hire. The Commission also commented that the arbitrator had erred in finding the claimant was concurrently employed on April 14, 1988. The Commission found, given he was laid off on April 13, 1988, the claimant could not be concurrently employed on April 14, 1988. The Commission reversed the arbitrator's decision and denied all compensation for claims. The circuit court subsequently confirmed.

On appeal, the claimant contends the evidence establishes the existence of an employer/employee relationship. The claimant contends that Cioni's version of how the claimant came to accompany Cioni to the auction is not credible. The claimant asserts Cioni controlled all aspects of the trip and that the practice of buying all food and drink was established on previous trips. The claimant also argues he provided a valuable service in transporting the vehicle back to Granville. The claimant insists the evidence shows an implied contract for hire was formed.

■ The Act defines employee as "[e]very person in the service of another under any contract of hire, express or implied, oral or written." (Ill. Rev. Stat. 1989, ch. 48, par. 138.1(b)(2).) Consistent with the philosophy of the Act, which assumes that a worker is gainfully employed at the time of his injury, it is generally recognized that a true employer/employee relationship does not exist in the absence of the payment or expected payment of consideration in some form by the employer to the employee. (*Board of Education v. Industrial Comm'n* (1972), 53 Ill. 2d 167, 290 N.E.2d 247.) Although the definition of "employee" contained in the Act is to be broadly construed, there can be no employer/employee relationship and therefore no liability under the Act in the absence of a contract for hire, express or implied. *Crepps v. Industrial Comm'n* (1949), 402 Ill. 606, 85 N.E.2d 5.

No rigid rule of law governs the determination of whether an employer/employee relationship exists and that determination depends on the facts of the particular case. (*Ragler Motor Sales v. Industrial Comm'n* (1982), 93 Ill. 2d 66, 442 N.E.2d 903.) No single fact controls and such factors as the right to control the manner in which the work is done, the method of payment, the right to discharge, the skill required and work done, and the furnishing of tools, material and equip-

ment must be considered. (*Village of Creve Coeur v. Industrial Comm'n* (1965), 32 Ill. 2d 430, 206 N.E.2d 706.) The existence of such a relationship is determined by an application of the principles governing the formation of other contracts and must reflect a meeting of the minds expressed by some offer on the part of one to employ or to work with another and an acceptance on the part of the other. *Crepps v. Industrial Comm'n* (1949), 402 Ill. 606, 85 N.E.2d 5.

■ When the evidence is conflicting and the facts are subject to diverse interpretations, it is within the province of the Industrial Commission to draw inferences from the evidence, ascertain the credibility of witnesses, evaluate conflicting testimony, and resolve whether the claimant has met his burden of proof. (*Ragler Motor Sales v. Industrial Comm'n* (1982), 93 Ill. 2d 66, 442 N.E.2d 903.) The findings of the Commission will not be disturbed on appeal unless they are contrary to the manifest weight of the evidence. *Hebeler v. Industrial Comm'n* (1991), 207 Ill. App. 3d 391, 565 N.E.2d 1035.

■ In the instant case, the only conflict in the underlying facts is the circumstances surrounding how the claimant came to accompany Cioni to the auction. The claimant insists Cioni invited him to the auction on the previous evening, while Cioni testified the claimant was present at the Town Club on April 14, 1988, and it was the claimant who asked to come along. The Commission made no specific finding either way on this conflict. However, viewing the entire series of events on the day of the incident, and Cioni's apparent practice of taking a number of these trips each year accompanied by his friends and potential customers, we find the Commission could find there was no employer/employee relationship.

The claimant did not expect any payment; however, he knew from past experience that Cioni would pick up the food and drink tab for the day. There was no guarantee Cioni would purchase vehicles necessitating the claimant driving one back to Granville. The Commission could easily find the food and drink were simply gratuitous. There was no meeting of minds on an implied contract for hire.

The claimant's reliance on *Ragler Motor Sales v. Industrial Comm'n* (1982), 93 Ill. 2d 66, 442 N.E.2d 903, is misplaced. In *Rangler*, among other facts, the claimant was paid $10 to accompany the employer to the auctions and give mechanical advice on potential purchases. In the instant case, the claimant went to the auction, looked at cars and watched the auction. He and Cioni had little if any contact during the auction. He was never asked his opinion on anything. It is clear he and the other gentlemen went along for a good

time. In fact, after the others left the group the claimant and Cioni continued drinking together for a considerable period of time.

In sum, the Commission's finding that no employer/employee relationship existed is not against the manifest weight of the evidence.

In that we agree with the Commission's finding of no employer/employee relationship, we need not address the other issues raised by the claimant.

Therefore, the judgment of the circuit court of La Salle County is affirmed.

Affirmed.

McCULLOUGH, P.J., and RAKOWSKI, WOODWARD and RARICK, JJ., concur.